FRANK W. SHAW and Others v. MILTON R. STAIGHT.[1]

February 19, 1909.

Nos. 15,919—(156)

**Issue of Stock—Partial Payment.**

Shares of stock in a corporation issued and sold as full paid stock, but for a sum less than its par value, are not void, but the agreement between the holder and the corporation that it shall be considered and treated as paid in full is voidable as to the creditors of the corporation.

**Action by Stockholder.**

The holder of such stock, though he paid therefor less than the par value, may maintain an action to protect such rights as accrue to him as a stockholder.

**Same—Refusal of Officers to Sue.**

A request to the managing officers of a corporation to institute an action to set aside and cancel a fraudulent issue of corporate stock, and their refusal, is all that is necessary to enable an individual stockholder to maintain the suit.

**Same.**

It is not necessary that he go further, and request other stockholders to commence the action.

**Findings Sustained by Evidence.**

Evidence *held* to justify the findings of the trial court to the effect that an issue of twenty eight thousand shares of the stock of defendant corporation was fraudulent and void.

**Same—Knowledge of Fraud.**

And that defendant Staight, the holder of a part of the stock so issued, had full knowledge of the facts constituting the fraud, and was not a good-faith holder thereof.

[1] Reported in 119 N. W. 951.

Action in the district court for Hennepin county by the executors of the will of Winfield S. Laton, deceased, substituted for their testator, and other stockholders of the Pacific Coast & Norway Packing Company to have four thousand shares of stock in that corporation declared null and void. A demurrer to the complaint by defendant Staight was overruled, Simpson, J. Staight then answered. The corporation did not answer. Defendant Staight's motion for judgment on the pleadings was denied, Frederick V. Brown, J. The case was tried before Dickinson, J., who also denied Staight's motion for judgment on the pleadings, found for plaintiffs and ordered that the stock be canceled. From a judgment entered pursuant to the order, defendant Staight appealed. Affirmed.

*H. D. Irwin,* for appellant.

Plaintiffs' cause of action is based upon and arises out of contracts or transactions, to which they were parties, which were illegal, fraudulent and against public policy; hence they are not entitled to equitable relief. They do not.come into court with clean hands. Unckles v. Colgate, 148 N. Y. 529; Pomeroy, Eq. Jur. §§ 397, 398, 401, 402. The contracts or transactions by which plaintiffs acquired their stock were prohibited by statute, against public policy and immoral. G. S. 1894, § 3415; See R. L. 1905, § 2878. See Wallace v. Carpenter Ele. Heating Mnfg. Co., 70 Minn. 321; Rogers v. Gross, 67 Minn. 224; Hastings Malting Co. v. Iron Range Brewing Co., 65 Minn. 28; Sturges v. Stetson, 1 Biss. 246; Gamble v. Queens County, 123 N. Y. 91; Zelaya v. Meyer, 28 N. Y. St. 759; Knowlton v. Congress, 57 N. Y. 518; Kimball v. New England, 69 N. H. 485; Oliphant v. Woodburn, 63 Iowa, 332; Spring Co. v. Knowlton, 103 U. S. 49. See G. S. 1894, § 6762; State v. Great Northern Ry. Co., 100 Minn. 445, 474.

Total want of consideration being the sole issue, on plaintiffs' theory of the law, consideration for the stock was proved—and no other issue was tried by consent or without objection.

The issuance of this stock and the contract by which it was issued was ratified and acquiesced in by the corporation and the stockholders. The stockholders in January, 1902, expressly recognized Kildall's ownership of ten thousand shares of this stock, and took cognizance of contract by which it was issued by appointing a trustee to vote it as provided therein.

*Benton, Molyneaux & Morley,* for respondents.

BROWN, J.

The facts in this case are as follows: The defendant Pacific Coast & Norway Packing Company is a corporation duly created and existing under the laws of this state. It was incorporated in May, 1900, for manufacturing purposes, with authority to prepare, sell, and dispose of all kinds of canned goods, pickles, smoked and dried herring, fish, and other sea foods, and to acquire, own, and hold all property necessary to the conduct of its business. Its capital stock was placed at $1,000,000, divided into one hundred thousand shares of a par value of ten dollars each. At the first meeting of the board of directors, the sale of fifty thousand shares of stock was authorized at one dollar per share. Winfield S. Laton purchased and became the owner of three hundred shares at that price. Plaintiffs Nellie and Fannie Cooley also became the owners of one hundred shares; each paying therefor the same consideration. Said plaintiffs Cooley have at all times since been the owners and holders of the stock so purchased by them.

Subsequent to the commencement of the action, Laton died, and plaintiffs Shaw and Gillerson were substituted as parties to the action; they being the executors of his last will and testament. Laton, or his estate, has at all times since the issuance of the stock to him continued the owner thereof.

In June, 1900, one Joseph Kildall, representing the Kildall Fish Company, a copartnership composed of himself, his father, and two brothers, made to the board of directors of defendant packing company the following proposition for the sale of certain rights and properties then claimed to be held and owned by the copartnership, namely:

"Minneapolis, Minnesota, June 2, 1900.

"Pacific Coast & Norway Packing Company,
    City.

        "Gentlemen:

"We hereby offer to sell to you our certain fishing outfit, consisting principally of fishing nets, lines, floats, boats, and articles now stored in our storehouse at Marietta, Washington.

"This fishing outfit originally cost us about $1,800.00. Also all our

right and title to certain fishing and packing locations which we have explored and decided upon in the territory of Alaska main location at Killisno, between Sitka and Juneau, which we value at twenty thousand dollars. These we agree to convey to you in consideration of twenty-eight thousand shares of the capital stock of your company, to be issued to Joseph Kildall.

"If this proposition is accepted then, in consideration of its acceptance, we collectively and individually agree to give to your company the benefit of our knowledge and experience in the fishing and packing business, and give to your company our best advice in its affairs, and Joseph Kildall to be bound to generally supervise the affairs of your company for a period of two years without further compensation.

"It is further understood that if the services of P. C. Kildall and Michael Kildall should be required by your company in the fishing and packing business, they will hold themselves in readiness to serve your company for compensation to be agreed upon by the board of directors, covering the time actually engaged.

"It is further understood that in addition to the above, Joseph Kildall in the event this proposition is accepted, binds himself to continue the management of the company's affairs for an additional period of three years at a compensation to be agreed upon by the board of directors, and none of the Kildalls here mentioned shall exact or demand anything more than a fair compensation.

"Respectfully submitted,

"Kildall Fish Company.
"Joseph Kildall."

Kildall was a promoter of the packing company and one of the incorporators, and at the time of the submission of this proposition a director, and acted as secretary of the meeting at which it was accepted. So that he acted in the dual capacity of seller and buyer, selling for his copartnership and participating in the purchase as one of the directors of the corporation. The proposition was accepted, and the twenty eight thousand shares of stock, the purchase price of the property therein named, subsequently issued to Kildall. By the terms of the acceptance, ten thousand of the shares were, to prevent the Kildalls from controlling the corporation, transferred to a trustee, to be held and controlled by him for the term of five years, and then turned

over to Kildall. But this fact is unimportant. Thereafter Kildall sold and transferred four thousand shares of the stock issued to him to defendant Staight, who is now the owner and holder thereof.

In September, 1903, plaintiffs, as stockholders, on the claim that the transaction by which the corporation accepted the Kildall proposition was a fraud and that no consideration ever passed from Kildall to the corporation, demanded that the officers thereof bring an action to set the same aside, and to cancel and annul the stock so issued. The officers refused to comply with the demand, and this action followed, by which plaintiffs, as stockholders, seek to avoid the transaction on the ground of alleged fraud and to cancel the stock held by Staight. The trial court found the facts substantially as stated; that the transaction was fraudulent; that the Kildall Fish Company had no fishing locations on the Pacific Coast or elsewhere, and conveyed none to the corporation in consideration of the stock issued to Kildall; that the fishing tackle and other property offered to be transferred to the corporation by the written proposition heretofore set out was old, worn out, and of no value whatever; and, further, that the corporation received no consideration from the issuance of this stock save the value of Kildall's services as secretary for the corporation for two years at $300 per year. The court also found that defendant Staight had full knowledge of all the facts and of the fact that Kildall had no fishing locations to sell or convey to the corporation; that the corporation never acquired such rights from the Kildall copartnership, also that the four thousand shares of the stock issued to Kildall and transferred to Staight were transferred to him wholly without consideration. The court also found that plaintiffs herein knew nothing of the merits of the transaction until about the time of the commencement of the action. Judgment was ordered and entered canceling and annulling the stock so held by Staight, and he appealed.

Several questions are presented by the assignments of error which will be considered in their order. Three of them, viz., that the complaint fails to state a cause of action, that the evidence is insufficient to justify the findings of fact, and that the findings of fact do not justify the conclusions of law, require no extended mention. Though the complaint is not so full and complete as perhaps it might have been made, it is sufficient in all essential respects, and sets forth facts en-

titling plaintiffs to the relief prayed for. With respect to the sufficiency of the evidence to sustain the findings, we have only to say that the record has been read with care, with the result that in our opinion all the findings of fact are fully supported by competent evidence. Whether the conclusions of law are supported by the findings of fact depends upon the result to be arrived at respecting the several contentions of defendant presently to be considered. That the proper judgment was ordered by the trial court we have no doubt. We come then to the specific contentions of defendant.

1. Defendant contends that plaintiffs cannot maintain the action, for the reason that the stock held by them is void, and they do not come into court with clean hands. This is based upon the fact, about which there is no controversy, that plaintiffs purchased and paid for the stock held by them at the rate of one dollar per share, the par value being ten dollars, with the understanding and agreement that the amount so paid should be in full and entitle them to certificates of fully paid stock. Fully paid stock was accordingly issued to them. The point is that this agreement was in violation of section 2878, R. L. 1905, prohibiting the issuance of corporate stock for less than its par value; and it is urged that the transaction was void, that plaintiffs are holders of stock illegally issued, and therefore without standing in a court of equity. The contention is not sound. It appears from the record that the stock of the corporation was divided into one hundred thousand shares of the par value of ten dollars. But at the time of the organization the stock was placed on the market at one dollar per share, at which price plaintiffs purchased the shares held by them. This was probably a violation of the statute above referred to, but the stock so issued was not necessarily so tainted with illegality as to render it void nor as fraudulent in the hands of the holders. The agreement that it should be fully paid stock was undoubtedly voidable and could be so adjudged at the suit of creditors, but until set aside and declared void at their instance it is valid, not only between the corporation and stockholders, but as between the several stockholders as well. Olson v. State Bank, 67 Minn. 267, 69 N. W. 904; Dunn v. State Bank, 59 Minn. 221, 61 N. W. 27.

As remarked in the case of Barcus v. Gates, 89 Fed. 783, 32 C. C. A. 337, it would be a new doctrine to hold that because a stockholder

has bought stock fror  a corporation at a price less than its par value, under an agreement that it shall be treated as paid in full, his stock is void, and he without standing in court to protect rights accruing the stockholders by reason of th  isconduct of the corporation or its managing officers.  Such a doctrine would, as intimated by Judge Mitchell in the Olson case, supra, convert the statute prohibiting such an issue of stock into a shield in the hands of the stockholders to defraud creditors who might trust the corporation.  If the stock so issued is void, then, in proceedings by creditors to compel the holders thereof to pay into the corporation the unpaid value, the fact that the stock was void would be a complete defense, and relieve them from any and all obligations to creditors.  The true doctrine in such cases is that the stock is not void, but the holder thereof may be compelled at the suit of creditors to pay into the corporation the full par value.  The stock is valid, but the agreement that it shall be considered as paid in full is voidable.  The authorities sustaining this vi  ·· may be found collected in a note to Easton v. American, 8 L. R. A. (N. S.) 271, and Security Trust Co. v. Ford, 8 L. R. A. (N. S.) 263.  The Minnesota cases cited by appellant do not sustain the position that such stock is void, or tainted with illegality to such an extent as to deprive the stockholder of the rights incident to his relation to the corporation.  Wallace v. Carpenter Ele. Heating Mnfg. Co., 70 Minn. 321, 73 N.  ·  189, 68 Am. St. 530, and Hastings Malting Co. v. Iron Range Brewing Co., 65 Minn. 28, 67 N. W. 652, involved rights of creditors, while Rogers v. Gross, 67 Minn. 224, 69 N. W. 894, was an attempt to enforce an executory contract for the purchase of stock at less than its par value.

2. It is further contended by defendant that the action as disclosed by the allegations of the complaint is one to set aside the stock held by him on the sole ground that it was issued without consideration, and that the court erred in admitting evidence of and finding as a fact that the transaction was fraudulent.  We do not construe the complaint in the light presented by counsel.  Its allegations are broad enough squarely to present the issue whether the Kildall transaction was a fraud from beginning to end to which the question of consideration or no consideration was a mere incident.  It alleges that stock was unlawfully and fraudulently issued to Kildall, and that he paid no considera-

tion therefor. If defendant desired more particular information in reference to the fraud, he should have moved seasonably for more definite and specific allegations. The o ʼtion that the complaint is indefinite or uncertain in this respect caṉṉot be raised either by demurrer or objection at the trial. The evidence established beyond doubt that the transaction was a fraud. Kildall had no fishing locations to sell, and the fishing tackle and other items of property referred to in his offer to the corporation were worthless and of no value whatever. By his offer of sale he valued the "locations" at $20,000, yet he had no locations whatever, and conveyed no such rights to the corporation.

At the time of the transaction, he was one of the directors of the corporation, and acted as secretary at the meeting at which the bargain and sale were consummated, and voted in favor of accepting his proposition, well knowing that the corporation would, in fact, receive no value for the stocʼ to be issued to him. It is this fraud that plaintiffs seek to expose, ꜰ ꝺ not a cancellation of the stock on the simple ground of no consideration, and the fact that the evidence disclosed, and the court found, that a small consideration did in fact pass to the corporation in the form of Kildall's services as secretary for the term of two years, which the court valued at $300 per year, and which services he aꞓ ꝛed to render as a part of his proposition, does not defeat the main rpose of the action. If the case involved a mere question of legal ꞏtle to the stock, the consideration stated would be sufficient to establish that legal right, but it is not such an action. On the contrary, it is one in equity, and is controlled by the rules and principles of law appropriate to that branch of jurisprudence.

Defendant Staight was a party to the fraud; at least had knowledge of all the facts, and is in no position to complain of the result; for, so far as disclosed by the record, he parted with nothing for the stock transferred to him by Kildall, and no rule of equity with which we are familiar will sustain his title to the stock so fraudulently obtained.

3. It is also contended that plaintiffs cannot maintain the action for the reasons: (1) That "the bringing of an action to cancel the stock was a matter within the discretion of the board of directors, and in the absence of fraud or bad faith on their part their refusal is final. (2) In any event application should have been made to the stockholders, or such circumstances shown as would make such application use-

less." Neither of these points is well taken. The fact that the transaction complained of was fraudulent and operated to the damage and injury of the stockholders of the corporation made it the duty of the officers thereof to bring an action in compliance with the request of plaintiffs. This they refused to do for the apparent reason that it might involve some of the present directors who were such at the time of the transaction, but were in fact guilty of no intentional wrongdoing. However, when the demand to sue was made upon them, at a meeting of the managing officers they placed upon the records a resolution to the effect that the transaction was a fraud, but they declined to go further, anticipating it is fair to assume from the evidence the bringing of this particular action. It being the duty of the officers to protect the stockholders and the corporation from the fraud of others, it cannot well be said to be discretionary with them whether to perform that duty, and their refusal cannot bar an action by an interested stockholder.

There is respectable authority for the proposition that in cases of this kind, where stock of a corporation has been fraudulently issued by its officers, the stockholders may maintain an action for its cancellation without requesting that the action be brought by the corporation. The action in such case is not in the interests of the corporation, but in the interests of and for the protection of the individual rights of stockholders. 26 Am. & Eng. Enc. (2d Ed.) 978; Stebbins v. Perry, 167 Ill. 567, 47 N. E. 1048; Kimball v. New England, 69 N. H. 485, 45 Atl. 253; Luther v. Luther, 118 Wis. 112, 94 N. W. 69, 99 Am. St. 977. But we need not go so far in the case at bar. A demand was in fact made upon the officers of the corporation; they refused to bring the action, and we hold that their refusal was not final. In other words, they had no discretion in the premises whatever, at least in so far as an exercise thereof would bar an action by individual stockholders. It is also clear that the demand upon the managing officers of the corporation was sufficient, and it was unnecessary that plaintiffs go further, and invoke the aid of other stockholders. 2 Clark & Marshall, Priv. Corp. § 543; Pencille v. State Farmers' M. H. Ins. Co., 74 Minn. 67, 76 N. W. 1026, 73 Am. St. 326; Baldwin v. Canfield, 26 Minn. 43, 1 N. W. 261, 276; 3 Pomeroy, Eq. Jur. (3d Ed.) § 1095, and cases

cited. A different rule is applied by the federal courts. 26 Am. & Eng. Enc. (2d. Ed.) 979.

There is a class of cases, however, where the refusal of the corporation through its officers to proceed is not sufficient to justify an action by an individual stockholder and in which he must appeal to the other stockholders to join him. This includes such rights of action as accrue to the corporation itself, not those accruing to the stockholders. In such case the refusal of the officers to bring suit, if in their judgment the interests of the corporation require that they refrain, is final, and can be overcome only by a combination of a majority of the stockholders. Leslie v. Lorillard, 110 N. Y. 519, 18 N. E. 363, 1 L. R. A. 456; 26 Am. & Eng. Enc. (2d Ed.) 1, 981. To this class belong nearly all the citations in appellant's brief in support of his contention on this branch of the case, within which the case at bar does not come. Here the injury complained of, and consequently the right of action, accrued to the stockholders, and not to the corporation as such.

4. Counsel also contend that the transaction, however fraudulent it may have been, was subsequently ratified by the corporation. This claim is without merit. In the first place no facts are found which justify the contention, and there was no error in the refusal of the court to so find. Moreover, if the transaction was fraudulent as to the stockholders, it was incapable of ratification by the corporation without their acquiescence and consent. 2 Cook, Corp. 653. It may be that the record presents such acts on the part of some of the stockholders or officers of the corporation as would sustain the theory of ratification, if at the time they were aware of the fraud. But no such conduct, with notice of the fraud, was traced to these plaintiffs, or either of them, and a finding that they had ratified the fraud, had it been made, would find no support in the evidence.

This covers all questions requiring special mention. We discover no error in the refusal to amend the findings, nor in the action of the court directing on its own motion an amendment to the complaint (Briggs v. Rutherford, 94 Minn. 23, 101 N. W. 954; Adams v. Castle, 64 Minn. 505, 67 N. W. 637), and no reversible error in any of the other assignments.

Judgment affirmed.