76 A.2d 121 (1950)
NEWKIRK et al.
v.
W. J. RAINEY, Inc., et al.
Court of Chancery of Delaware, New Castle.
October 26, 1950.
*122 James R. Morford and Edward W. Cooch, Jr. (of Morford, Bennethum, Marvel & Cooch), Wilmington, for plaintiffs.
C. S. Layton (of Richards, Layton & Finger) and Earl F. Reed (of Thorp, Bostwick, Reed & Armstrong), Pittsburgh, Pa., for moving defendants.
SEITZ, Vice Chancellor.
Certain of the defendants have moved to dismiss as to all plaintiffs except plaintiffs Newkirk and Mazzotti or to strike such plaintiffs on the ground that they were not stockholders at the times of the transactions of which they complain and their stock did not devolve upon them by operation of law. This objection is predicated on Sec. 51A of the General Corporation Law of Delaware, Rev.Code 1935, § 2083A, as added by 45 Del. Laws, c. 157, § 4, which provides: "In any derivative suit hereafter instituted by a stockholder of a corporation organized under the laws of this State, it shall be averred in the Bill of Complaint that the Complainant was a stockholder of the corporation at the time of the transaction of which he complains or that his stock thereafter devolved upon him by operation of law."
Thus, it must be ascertained whether the plaintiffs covered by defendants' motion were owners (either legal or equitable) of the stock at the times of the transactions of which they complain. Plaintiffs tacitly concede that their stock did not devolve upon them by operation of law.
To dispose of the issue posed, I must determine during what period of time the transactions of which plaintiffs complain took place.
In this action plaintiffs seek to have a trust impressed upon stock of Texas Gas Transmission Corporation held by the corporate defendants Hecla Coal & Coke Company and W. J. Rainey, Inc., and/or the individual defendants. Plaintiffs allege that one J. H. Hillman, Jr., and the other individuals as well as the corporate defendants, acting under Hillman's domination and control, in breach of their fiduciary duties to Pennsylvania Industries, Inc., diverted to their own use and profit corporate opportunities to which Industries rightfully was entitled.
I shall summarize the pertinent allegations. In 1944 Hillman knew of the bright prospects for natural gas industries. He then conceived the plan of creating a vast natural gas transmission system. Pursuant to Hillman's preconceived plan he diverted from Industries in June, 1944, the opportunity to purchase shares of Kentucky Natural Gas Corporation. In November, 1945, pursuant to his plan, Hillman diverted from Industries a second corporate opportunity to purchase Kentucky stock. Also pursuant to his preconceived plan, Hillman *123 on December 5, 1945, diverted from Industries a corporate opportunity to purchase stock of Memphis Natural Gas Corporation.
On December 7, 1945, Hillman caused Texas to be organized for the purpose of consolidating the operation of Kentucky and Memphis in furtherance of his preconceived plan to develop an integrated natural gas transmission system. This preconceived plan was not consummated until April 9, 1948, when the merger of Kentucky, Memphis and Texas was achieved.
Plaintiffs contend that although the wrong of which they complain had its inception before they acquired their stock, they are not precluded from maintaining a derivative action because it was continuing at and after the times plaintiffs purchased their stock. They argue that when a wrong is a continuing one and has not been consummated, a derivative action may be maintained by stockholders who purchased their shares after the "inception" of the wrong. They say the alleged plan of wrongdoing was begun in 1944 and was not consummated until April 9, 1948, when the merger of the corporations involved in the scheme took place.
Defendants point out that none of these plaintiffs acquired their stock until at least October, 1947. They further point out that the last stock purchase of which these plaintiffs complain took place in 1945. Thus defendants say the transactions were not continuing when the plaintiffs purchased their stock.
The issue is whether the actual diversion of the three corporate opportunities to purchase stock in 1944 and 1945 are the transactions of which plaintiffs complain, or whether, because of the alleged continuing scheme, the 1948 merger constituted the culmination of the transactions of which plaintiffs complain.
There is substantial authority for the general proposition that if, in a derivative action, the wrong complained of is a continuing one and has not been consummated, a transferee of stock may sue although the wrong commenced before the transfer. See 13 Fletcher Cyc. Corps. (Perm.Ed.), Sec. 5982. This rule is sometimes called an "exception" to the statutory rule, our Sec. 51A, that in order to maintain a derivative action the stockholder must allege that he was a stockholder at the time of the transaction of which he complains. In states where such a statute exists and the rule is recognized, there is no inconsistency in application because those courts do not permit a stockholder to attack transactions which were "executed" or "consummated" prior to the date he acquired his stock. See Milton v. Krivit, Sup., 82 N.Y.S. 2d 38.
I must determine what are the "transactions" and whether they were continuing when plaintiffs acquired their stock. Of course, in one sense every wrongful transaction constitutes a continuing wrong to the corporation until remedied. But if the rule embodied in Sec. 51A is to be meaningful, then clearly "continuing wrong" cannot be construed in such a sense because it would substantially defeat the statutory policy embodied in Sec. 51A. That policy is the prevention of the evil of purchasing stock in order to maintain a derivative action designed to attack a transaction which occurred prior to the purchase of the stock. See Rosenthal v. Burry Biscuit Corp., Del.Ch., 60 A.2d 106.
Although a conspiracy culminating in the 1948 merger is alleged, the fact is that plaintiffs complain of and seek relief with respect to three specific transactions. They involve three stock purchases in the years 1944 and 1945. Those purchases in my opinion are the transactions in the sense in which the term "transaction" is employed in Sec. 51A. I say this because they are the wrongful acts which plaintiffs want remedied and which are susceptible of being remedied in a legal tribunal. The allegation of a conspiracy cannot obscure the hard fact that the stock purchases are the wrongs which plaintiffs want rectified. Once it is decided, and I so decide, that the stock purchases are the "transactions" of which plaintiffs complain, it almost necessarily follows under the undisputed facts that such transactions were consummated prior to the date plaintiffs acquired their stock.
*124 To paraphrase the statement of the New York court in Weinstein v. Behn, Sup., 65 N.Y.S.2d 536, affirmed, 272 App.Div. 1045, 75 N.Y.S.2d 284, the allegations concerning the conspiracy refer back to the alleged original wrongs, all of which occurred before these plaintiffs acquired their stock. Those wrongful acts cannot by the specious device of employing appropriate language be transferred into continuing wrongs for the purpose of overriding Sec. 51A of the General Corporation Law of Delaware. I conclude that the motion to dismiss as to all plaintiffs except Newkirk and Mazzotti should be granted.
Order on notice.