EDWARD B. McMENOMY AND ANOTHER v.
ARNOLD J. RYDEN, JR., AND OTHERS.

176 N. W. (2d) 876.

March 20, 1970—Nos. 41788, 42031, 42127.

*Samuel H. Hertogs, Fred Burstein, Wolf, Popper, Ross, Wolf & Jones,* and *Paul L. Ross,* for appellants.

*Dorsey, Marquart, Windhorst, West & Halladay, Bernard G. Heinzen, Robert A. Heiberg, Thompson, Hessian, Fletcher & McKasy, John J. McKasy, Johnson & Thompson, Bruce F. Thompson, James M. Neville, Faegre & Benson, Gordon G. Busdicker, Maslon, Kaplan, Edelman, Joseph & Borman, John C. McNulty, Nielsen, Stock & Blackburn, D. James Nielsen, Henson & Webb, Robert F. Henson, Richard A. Solum, Mackall, Crounse, Moore, Helmey & Holmes, Thomas P. Helmey, Best, Flanagan, Lewis, Simonet & Bellows, Harold C. Evarts,* and *William W. Essling,* for respondents.

*Altman, Geraghty, Leonard & Mulally, Richard J. Leonard, James Geraghty, Jenner & Block, Wesley G. Hall, John J. Crown,* and *Robert C. Keck, Jr.,* for Midtex, Inc., amicus curiae.

KNUTSON, CHIEF JUSTICE.

These are appeals from various orders and a judgment dismissing plaintiffs' derivative action with prejudice as to all defendants.

Various aspects of the case have been here before. In McMenomy v. Ryden, 276 Minn. 55, 148 N. W. (2d) 804, 30 A. L. R. (3d) 1078, we held that a determination by the Honorable Gunnar Nordbye in an action brought by the Securities Exchange Commission in Federal court[1] was not res judicata of the right to maintain this derivative action under Minnesota law. In Tomash v. Midwest Technical Development Corp. 281 Minn. 21, 160 N. W. (2d) 273, we affirmed a decision of the trial court holding that the expenses of two directors and officers in defending themselves against the S. E. C. case mentioned above need not be paid by the corporation because the directors and officers had not been completely vindicated in the action in Federal court.

Many of the facts involved in the case may be found in these two decisions. We will restate only those that are necessary to decide the issues now before us.

---

[1] See, CCH, Federal Securities Law Reporter, 1961-1964 Decisions, par. 91, 252.

Plaintiffs as minority shareholders[2] of Midwest Technical Development Corporation (hereinafter Midwest) commenced this derivative action in June 1962 against 18 individuals, and the corporation as nominal defendant, to recover what they alleged to have been profits derived by the individual defendants in dealing in stock held in the portfolio of Midwest, which was a closed-end investment company dealing mainly in companies in technological fields. About the same time, the S. E. C. had brought an action under the Investment Company Act of 1940, 54 Stat. 789, 15 USCA, § 80a-1, et seq., against Midwest and these same individual defendants, alleging violation of that act.

In October 1965 Midtex, Inc., was organized to acquire the assets of Midwest and the sale was completed in December 1965. Midwest sold "all of the assets and properties of every kind and nature owned by Midwest on the Closing Date, whether or not disclosed on Midwest's books and records, including any contingent assets or claims arising out of Midwest's operations prior to the Closing Date * * * subject, however, to all of the liabilities or obligations of Midwest." Midwest was never dissolved and so far as appears from the record still exists and has shareholders, officers, and directors.

In June 1968 defendants moved to dismiss this derivative suit, claiming that neither plaintiffs nor Midwest were real parties in interest as a result of the sale of the assets of Midwest to Midtex. On November 19, 1968, the district court ruled that Midtex was the real party in interest and that the action would be dismissed unless Midtex were joined as a party on or before May 1, 1969. On December 12, 1968, plaintiffs made a demand on the Midtex board of directors to proceed with the action. The matter was referred to independent Chicago counsel, who recommended that it would not be for the best interests of the corporation to prosecute the action. As a result of this advice Midtex refused

---

[2] From the record it appears that plaintiffs owned 200 shares of about 1,163,650 outstanding. They received 200 shares of Midtex, Inc., following its purchase of Midwest's assets in December 1965.

to join or to intervene. On April 14, 1969, plaintiffs moved to join Midtex as party-defendant and to permit them to amend their complaint so as to proceed with their derivative action for the benefit of Midtex. On May 1, 1969, the district court entered its order refusing to permit Midtex to be joined as an involuntary party-defendant, and on May 20, 1969, the district court dismissed the action on the grounds that Midtex was an indispensable party and had not seen fit to intervene or join in the action.

It is not clear whether the derivative cause of action brought to recover for the benefit of Midwest was assigned to Midtex upon the sale to it of Midwest's assets. In the proxy statement sent to the stockholders of Midwest relative to a special meeting called for the purpose of seeking authorization for the sale of these assets, we find in a list of pending actions:

"A pending action brought in the Fourth Judicial District, State of Minnesota, by a Summons and Complaint served on Midwest on June 1, 1962, on behalf of the corporation. This action was entitled Edward B. McMenomy and Ellen T. McMenomy, Plaintiffs, vs. Arnold J. Ryden, Jr., John B. Hawthorne, Robert A. Larsen, Byron D. Smith, Willis K. Drake, Howard L. Daniels, Henry C. Stephenson, Fremont C. Fletcher, Norman Terwilliger, Arthur H. Smith, Gordon C. Paske, Neal R. Amundson, John E. Andrus, III, C. Edward Howard, Ray D. Johnson, Erwin Tomash, L. S. Ryan, Jr., John L. Hill, Electro-Logic Corporation, National Semi-Conductor Corporation, Technical Management Services Corporation and Midwest Technical Development Corporation. The action brought for the benefit of Midwest and its stockholders, seeks an accounting and recovery of personal profits alleged to have been obtained by former officers and directors of Midwest through use as alleged of the 'corporate shelter' and by means of personal investments in securities issued by corporations in which Midwest also held investments. It is alleged that such acts constituted a breach of fiduciary duty by said officers and directors in violation of both State law and the

Investment Company Act of 1940. Mr. L. S. Ryan already has been dismissed from this case. If the plaintiffs prevail, it could result in the payment of monies to Midwest. In that event, the two shareholders who have brought this action might become entitled to reimbursement from Midwest for their legal fees and costs. However, such reimbursement probably would be awarded by the court only out of monies awarded to Midwest."

In the sale agreement, we find the following:

"Midwest agrees to and hereby does sell, assign and transfer to MTX [Midtex] and agrees to deliver and set over to MTX as of the Closing Date all of the assets and properties of every kind and nature owned by Midwest on the Closing Date, whether or not disclosed on Midwest's books and records, including any contingent assets or claims arising out of Midwest's operations prior to the Closing Date with the exception of $10,000, which shall be retained by Midwest for payment of expenses incident to its liquidation, subject, however, to all of the liabilities or obligations of Midwest of every kind or nature whatsoever and whether or not accrued or recorded on the books and records of Midwest (including specifically any liabilities or obligations which may arise out of any pending litigation), which liabilities and obligations MTX assumes and agrees to pay when due, provided, however, MTX does not assume any liability or obligation to the extent the same shall constitute a violation of any of the warranties or representations made in this Agreement by Midwest."

Reading the first statement literally would lead one to believe that the action was to be continued for the benefit of Midwest. If that be true, the trial court was in error in holding that Midwest was no longer the real party in interest after the assignment of its assets to Midtex. Reading the sale agreement might lead one to believe this cause of action was sold to Midtex. If it was the intention of the parties that this cause of action be assigned to Midtex, then the court should have granted plaintiffs'

motion to join Midtex as an involuntary party-defendant so that the action could proceed for its benefit.

A stockholders' derivative action of the type that we have here is an invention of equity to permit stockholders to seek relief for breach of fiduciary duty by officers or directors when the corporation itself refuses to bring such action. In Koster v. Lumbermens Mutual Cas. Co. 330 U. S. 518, 522, 67 S. Ct. 828, 830, 91 L. ed. 1067, 1072, the court said:

"The stockholder's derivative action * * * is an invention of equity to supply the want of an adequate remedy at law to redress breaches of fiduciary duty by corporate managers. Usually the wrongdoing officers also possess the control which enables them to suppress any effort by the corporate entity to remedy such wrongs. Equity therefore traditionally entertains the derivative or secondary action by which a single stockholder may sue in the corporation's right when he shows that the corporation on proper demand has refused to pursue a remedy, or shows facts that demonstrate the futility of such a request. * * *

"The cause of action which such a plaintiff brings before the court is not his own but the corporation's. It is the real party in interest and he is allowed to act in protection of its interest, somewhat as a 'next friend' might do for an individual, because it is disabled from protecting itself."

In DePinto v. Provident Security Life Ins. Co. (9 Cir.) 323 F. (2d) 826, 836, the court said:

"* * * The aid of equity is needed in order to establish the shareholder's right to sue in the corporate stead [citing Fanchon & Marco, Inc. v. Paramount Pictures, Inc. (2 Cir.) 202 F. (2d) 731, 734, 36 A. L. R. (2d) 1336]."

That being so, it should not be possible to frustrate this remedy created by equity by the simple expedient of creating a new corporation and assigning the assets of one for whose benefit suit is brought to the newly created entity. Someone should have the continuing right to seek relief from those guilty of

breach of fiduciary duty, if there has been such. The stockholders of Midwest, if there was a breach of fiduciary duty by the managing officers, did not lose the right to recover simply because the assets were transferred to a new corporation.

Niesz v. Gorsuch (9 Cir.) 295 F. (2d) 909, involved a derivative stockholders' action brought on behalf of United Security Life (United). After the action was commenced, United was merged with Provident Security Life Insurance Company (Provident) and United went out of existence. The claim there was that the stockholders' suit could not be maintained after United ceased to exist. That case is distinguishable from the action now before us in that Midwest has not ceased to exist. While the court there held that the suit could not continue against United after the merger, its disposition of the case was interesting. It said (295 F. [2d] 913):

"Upon completion of the merger two means of saving the lawsuit were available, neither of which has so far been taken. One was for Provident as an indispensable party to intervene as party plaintiff. * * *

"The other course which would have kept this lawsuit viable following the merger was for some stockholder of Provident to intervene in a derivative capacity and to join Provident as a party defendant, had Provident refused to intervene voluntarily."

The case was remanded to the trial court (295 F. [2d] 914) "to provide an opportunity for Provident to join, or be joined, in this lawsuit. In the event no effort is made in this direction within a reasonable time, the action should be dismissed." Upon remand, a stockholder of Provident as well as Provident itself did intervene in the case. The court decided that while ordinarily a demand would have to be made on Provident as successor corporation, a demand would have been futile in this case. See, DePinto v. Provident Security Life Ins. Co. (9 Cir.) 323 F. (2d) 826. Although Provident had sought to intervene as a plaintiff, it was realigned as a defendant.

As has been mentioned above, United merged with Provident and went out of existence, which is not the case here. The United-Provident agreement also provided, with respect to the stockholders' action brought on behalf of United, that "monies * * * [may be] paid to Provident as the surviving corporation," which made it clear that any recovery would be the property of Provident. 295 F. (2d) 913.

Marco v. Sachs, 201 Misc. 928, 106 N. Y. S. (2d) 522, is somewhat analogous to the case before us. There, the stockholders of Blue Ridge Corporation brought a derivative action against the corporation and some directors. Prior to the action it was agreed that Blue Ridge Corp. was to transfer most of its assets to Blue Ridge Mutual Fund, Inc., under an agreement of merger pursuant to a reorganization under the Federal Bankruptcy Act. Under this agreement Blue Ridge Corp. was to transfer certain assets and contingent claims, including the derivative action involved in the case, to Ridge Realization Corporation. The court held the action must be maintained for Blue Ridge Corp. and that Ridge Realization could not be substituted for Blue Ridge Corp. The court said Ridge Realization was not a successor in interest but was only an assignee. The court permitted Ridge Realization to be joined only as a nominal party-defendant.

The Blue Ridge case is analogous to the case at hand in another way. Counsel managed to appeal various issues for 6 years without going to trial. The case appears never to have gone to trial. For the subsequent history, see Marco v. Sachs, 201 Misc. 934, 109 N. Y. S. (2d) 226, affirmed without opinion, 279 App. Div. 1085, 113 N. Y. S. (2d) 449, affirmed without opinion, 304 N. Y. 912, 110 N. E. (2d) 737. Then see, Id. 283 App. Div. 1096, 131 N. Y. S. (2d) 678; Id. 1 App. Div. (2d) 849, 149 N. Y. S. (2d) 440; Id. 4 App. Div. (2d) 785, 165 N. Y. S. (2d) 563.

It has been argued that inasmuch as Midtex, after procuring legal advice from independent attorneys, decided not to continue the suit or to join it, plaintiffs are thereby barred from continuing the suit. We think this question has been answered in

Shaw v. Staight, 107 Minn. 152, 160, 119 N. W. 951, 954, 20 L. R. A. (N. S.) 1077, where we said:

"* * * The fact that the transaction complained of was fraudulent and operated to the damage and injury of the stockholders of the corporation made it the duty of the officers thereof to bring an action in compliance with the request of plaintiffs. This they refused to do for the apparent reason that it might involve some of the present directors who were such at the time of the transaction, but were in fact guilty of no intentional wrongdoing. However, when the demand to sue was made upon them, at a meeting of the managing officers they placed upon the records a resolution to the effect that the transaction was a fraud, but they declined to go further, anticipating it is fair to assume from the evidence the bringing of this particular action. It being the duty of the officers to protect the stockholders and the corporation from the fraud of others, it cannot well be said to be discretionary with them whether to perform that duty, and their refusal cannot bar an action by an interested stockholder."

See, also, Winter v. Farmers Educational & Co-op. Union, 259 Minn. 257, 267, 107 N. W. (2d) 226, 233, where we said:

"* * * The derivative suit is recognized as an extraordinary remedy available to the shareholder as the corporation's representative only when there is 'no other road to redress.' The demand upon the managing directors and shareholders is important in that it gives the management of the corporation an opportunity to consider the merits of the dispute and to determine, in the interests of the corporation and shareholders, whether it might be disposed of without the expense and delay of litigation."

Here the members of the board of directors of Midtex, only one of whom was a member of the board of Midwest at the time plaintiffs commenced this action, have exercised their judgment in deciding not to join the lawsuit or to continue with it. This

they had a right to do. By refusing to become a party to the lawsuit, they undoubtedly have chosen a course that will eliminate liability on the part of Midtex for the payment of expenses of the litigation. However, this should not preclude the joining of Midtex as an involuntary defendant if it is in fact the real party in interest as the assignee of the cause of action brought for the benefit of Midwest.

It may be possible to determine prior to trial whether it was the intention of the parties to assign this cause of action to Midtex. If so, the action should proceed for the benefit of the corporation that will receive the benefit of the recovery, if there is one. Unless that issue is determined before trial, Midtex should be joined as an involuntary defendant and the case proceed with both Midwest and Midtex named as defendants. If there is a recovery, the question as to who shall receive the benefit of it can then be determined after the trial.

The case is therefore remanded to the trial court for disposition in conformity with this opinion.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.