The VISTA FUND, Appellant,

v.

Gordon O. GARIS, et al., Respondents,

Deltak Corporation, et al., Respondents,

Community Investment Enterprises, Inc., Respondent,

Cummins Diesel Sales, Inc., etc., Respondent.

No. 48656.

Supreme Court of Minnesota.

Jan. 26, 1979.

Gray, Plant, Mooty, Mooty & Bennett and Curtis D. Forslund and Susan L. Lentz, Minneapolis, for appellant.

Fredrikson, Byron, Colborn, Bisbee & Hansen and Jerome B. Pederson and John A. Satorius, Minneapolis, for Garis, et al.

Rider, Bennett, Egan & Arundel and Timothy R. Thornton and Scott K. Goldsmith, Minneapolis, for Deltak, et al.

Arthur E. Anderson, LeSueur, Carlsen, Greiner & Law, Minneapolis, for respondents.

Heard before ROGOSHESKE, KELLY, and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

■ This is an appeal from a judgment of the Hennepin County District Court granting partial summary judgment and dismissing a complaint insofar as it asserts any stockholders' derivative claims on behalf of defendants, Foster Wheeler Company (Foster Wheeler) and RayGo, Inc. (Ray-Go).[1] We affirm.

Plaintiff, the Vista Fund (Vista), is a Minnesota partnership formed to invest in promising new enterprises. In December 1967, Vista purchased shares in defendant RayGo, a Minnesota corporation. At that time RayGo included a division known as the Deltak Division, which engaged in the design and sale of waste heat recovery units and fire heaters. The complaint alleges that in September of 1972 the individual defendants named herein, all of them officers and directors of RayGo, formed a new corporation which they controlled and named the Deltak Corporation. It further contends that, on September 29, 1972, these defendants caused Deltak Corporation and RayGo to enter into a purchase agreement whereby RayGo conveyed to Deltak Corporation the entire Deltak Division of RayGo for $1,601 of Deltak stock,[2] an amount allegedly far below the fair market value of the assets conveyed. In addition, the complaint alleged other instances of fraud, negligence, and breaches of fiduciary duties against other named defendants with respect to the Deltak Corporation dealings. Vista seeks, *inter alia*, judgment in its favor and in favor of RayGo in the amount of the difference between $1,601 and the present value of all outstanding shares of Deltak Corporation.

The record indicates that plaintiff was apprised of, and expressed concern about, the Deltak transactions. In a deposition, David E. Johnson, the managing partner of Vista, stated that he raised questions about the Deltak dealings at the March 3, 1973, RayGo annual stockholders meeting. Further, Johnson claims that after the meeting he engaged in a discussion with defendant Chenoweth, a director of RayGo, regarding these transactions. Johnson also states that he had individual and group meetings with the partners of Vista at which the Deltak transactions were discussed. In addition, the record reveals that Johnson held three other meetings with RayGo officials to discuss plaintiff's concerns about the Deltak dealings.

On March 26, 1974, RayGo entered into a plan of merger with Foster Wheeler Acquisition Corporation, a wholly-owned subsidiary of Foster Wheeler. After approval by RayGo shareholders, the merger was concluded on May 16, 1974. Pursuant to the merger agreement, all RayGo shareholders were required to exchange their RayGo stock for shares of Foster Wheeler, and Foster Wheeler became, and still is, the sole shareholder of RayGo. Vista exchanged its RayGo stock for 2,111 shares of Foster Wheeler.

In early October 1974, Vista sold all of its Foster Wheeler stock. In a letter dated November 16, 1976, Vista's counsel made a demand on Foster Wheeler's board of directors to commence a shareholders' derivative suit against RayGo and certain individuals to recover for fraudulent conduct, breaches of fiduciary duty, etc., with respect to the Deltak transactions. The demand letter incorrectly represented that plaintiff was a shareholder of Foster

---

1. In accordance with Rule 54.02, Rules of Civil Procedure, the trial court ordered entry of final judgment as to plaintiff's derivative claims, and consequently this matter is properly before us per Rule 103.03(a), Rules of Civil Appellate Procedure. See, 2 Minnesota Practice, Civil Rules Ann., p. 526.

2. At oral argument the court was informed that RayGo distributed the Deltak shares to its then existing shareholders, including Vista. Vista presently owns these shares.

Wheeler. In its brief, Vista claims that this erroneous statement was included in the letter because its counsel had not been informed that Vista sold its Foster Wheeler stock. Foster Wheeler decided to take no action as a result of the demand letter because, in its counsel's opinion and in the opinion of management, "Foster Wheeler Corporation had no claim against RayGo, Inc., or its past or present officers and directors that Foster Wheeler Corporation might assert in a derivative action."

On August 3, 1977, plaintiff purchased 100 shares of Foster Wheeler stock. Vista's complaint, asserting both derivative claims and a class action, was served on Foster Wheeler on August 10, 1977. Shortly after commencement of suit, Vista moved for appointment of independent counsel, separate from the counsel representing the individual defendants, to represent defendants RayGo and Foster Wheeler. While this motion was under advisement, RayGo and Foster Wheeler moved the court for summary judgment as to the derivative claims. This motion was granted, and partial summary judgment was entered in these defendants' favor. The other relief sought by Vista was not affected by this judgment. In a separate order the court denied plaintiff's request for independent legal representation of RayGo and Foster Wheeler, reasoning that the derivative claims had been disposed of and that therefore separate representation was not appropriate. Vista now appeals from the judgment entered in the trial court.

This case presents the following issues for our consideration: [3]

(1) Does Rule 23.06, Rules of Civil Procedure, require that plaintiff be a shareholder at the time he commences a stockholder's derivative action?

(2) If so, must such ownership be continuous and uninterrupted from the time of the alleged wrongs to the time suit is brought?

(3) Are the alleged wrongs in this case continuous in nature?

(4) Does Rule 23.06 infringe upon substantive rights in contravention of Minn.St. 480.051?

 Rule 23.06, Rules of Civil Procedure, requires that a plaintiff meet certain stock ownership requirements before he may invoke the equitable remedy [4] of a shareholder's derivative suit. The rule states, in pertinent part, as follows:

"In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law."

Vista argues that a plaintiff need not be a shareholder at the time a stockholder's derivative suit is commenced because Rule 23.06 requires only that "the complaint shall allege that the plaintiff was a shareholder * * * at the time of the transaction of which he complains * * *." [5] This con-

---

**3.** We note that this case involves a suit by a shareholder of a parent corporation to redress an alleged wrong committed against a subsidiary corporation owned by the parent. This is commonly referred to as a "double derivative" action. See, 7A Wright and Miller, Federal Practice and Procedure, § 1821, p. 294 (1972). In light of our disposition of this case, we need not decide whether a "double derivative" action is properly maintainable under the facts of the instant case.

**4.** A shareholder's derivative suit is an equitable remedy which allows a stockholder to bring an action on behalf of the corporation to enforce a

corporate right. 13 Fletcher, Cyclopedia Corporations (Rev.vol.1970) § 5908. As we stated in *McMenomy v. Ryden*, 286 Minn. 358, 363, 176 N.W.2d 876, 879 (1970), a stockholder's derivative action is " * * * an invention of equity to permit stockholders to seek relief for breach of fiduciary duty by officers or directors when the corporation itself refuses to bring such action."

**5.** This portion of Rule 23.06 is commonly referred to as the "contemporaneous ownership requirement." See, 13 Fletcher, Cyclopedia Corporations (Rev.vol.1970) § 5981.

tention is without merit. The rule states that a derivative action is one "brought by one or more *shareholders* * * *" (italics supplied). The use of the term "shareholders" requires that the plaintiff own stock in the corporation at the time he brings suit. Indeed, the Federal counterpart to Rule 23.06 [6] has been so interpreted. See, e. g., *Werfel v. Kramarsky*, 61 F.R.D. 674 (S.D.N.Y.1974); *deHaas v. Empire Petroleum Co.*, 435 F.2d 1223 (10 Cir. 1970). As was stated in *Werfel, supra*:

> "Rule 23.1, Fed.R.Civ.P., does not expressly require that a derivative plaintiff be a shareholder at the time of suit. Such a requirement is implied by the rule, however, since it deals with actions 'brought by "one or more shareholders. * * *."' [Citations omitted.] The cases under the rule clearly establish that one who does not own shares in a corporation at the time a suit is filed is not qualified to bring a derivative action on its behalf. [Citations omitted.]" 61 F.R.D. 679.

■ 2. The trial court interpreted Rule 23.06 as requiring a plaintiff, in order to have standing to maintain a derivative action, to continuously and uninterruptedly own stock in the corporation from the time of the alleged wrongs through the time suit is commenced. Since Vista sold its stock before it commenced suit (although it purchased 100 shares of Foster Wheeler stock shortly before bringing this action), the district court ruled that it lacked standing to maintain the instant derivative action. Vista argues that the trial court's ruling is erroneous because even if it must be a shareholder at the time of suit, uninterrupted ownership of the stock from the time of the alleged wrongs until commencement of suit is not required. It claims that it owned RayGo stock at the time of the alleged wrongs and owned Foster Wheeler stock at the time suit was brought, and thus satis-

fied Rule 23.06. Again, this contention is without merit.

■ It is consistent with the policy underlying Rule 23.06 to require continuous stock ownership. The purpose of the stockholding requirements of the rule is "to prevent persons from purchasing stock solely for purposes of maintaining shareholders' derivative actions." Rule 23.06, Advisory Committee Note. In other words, the share ownership requirement is intended to prevent the litigating of purchased grievances or speculating in wrongs done to corporations . See, *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 556, 69 S.Ct. 1221, 1230, 93 L.Ed. 1528, 1541 (1949). Once a shareholder has sold his stock he is in the same position as any other non-shareholder. Accordingly, when he reacquires stock and brings suit based on a corporate wrong occurring during his prior ownership he is, in effect, purchasing a grievance or speculating in corporate wrongs. Indeed, this is what occurred here; we were advised by Vista's counsel at oral argument that the 100 shares of Foster Wheeler were purchased in an attempt to satisfy the requirements of Rule 23.06. Thus, it is apparent that plaintiff purchased a grievance when it reacquired Foster Wheeler stock. Based on the above reasoning, we conclude that continuous ownership must be required to effectuate the policy behind Rule 23.06.

This result is consistent with that reached in *Gresov v. Shattuck Denn Mining Corp.*, 40 Misc.2d 569, 243 N.Y.S.2d 760 (Sup.Ct. 1963), the only case which has directly considered the instant issue.[7] In *Gresov*, the plaintiff brought a shareholder's derivative suit to enforce a right of the Shattuck Corporation. After the action was commenced, the plaintiff sold his Shattuck stock, but reacquired some Shattuck shares just prior to the start of trial, about 2½ years later. The court held that this interruption in the ownership of Shattuck Cor-

---

**6.** The pertinent portion of Federal Rule 23.1 is identical to the language of Minnesota Rule 23.06.

**7.** It should be noted that our conclusion is also supported by the decision in *Bachrach v. Gen-*

*eral Inv. Corp.*, 29 F.Supp. 966 (S.D.N.Y.1939), wherein the court stated, in *dicta*, that " * * * continuous ownership of stock is a requirement under Rule 23 of the Federal Rules of Civil Procedure * * *." 29 F.Supp. 967.

poration stock precluded the plaintiff from maintaining the stockholder's derivative suit. In so doing, the court reasoned:

" * * * In a derivative stockholder's action the plaintiff must be a shareholder in the corporation, for whose benefit he sues, from the time the alleged improper acts occurred continuously and uninterruptedly until after judgment is entered in the case.

"The logic of this requirement is apparent. The plaintiff, suing as a representative of stockholders similarly situated, upon the sale of his interest in the corporation, loses his status, as such representative * * *. Plaintiff may not prosecute an action as a member of a class to which he does not belong. His rights as a stockholder to complain of alleged improper acts by the corporation directors ends with the sale of his stockholdings. By repurchasing stock at a later time he cannot revive and reacquire the rights which were extinguished when his stockholdings were sold. Reacquiring a stock interest at a subsequent time would not place the plaintiff in the same position respecting the alleged improper transaction as those stockholders who continuously held stock in the corporation from the time an alleged improper transaction took place up to the entry of judgment in the action.

"As a stockholder in September, 1963, the plaintiff may only challenge wrongs occurring after that date. He may not complain of acts antecedent to his stock ownership. [Citations omitted.]" 243 N.Y.S.2d 762.

Before the district court, and on appeal, plaintiff relies primarily on the case of *Bateson v. Magna Oil Corp.*, 414 F.2d 128 (5 Cir. 1969), certiorari denied, 397 U.S. 911, 90 S.Ct. 909, 25 L.Ed.2d 91 (1970), to support its contention that continuous stock ownership is not required by Rule 23.06.[8] Vista's reliance on that decision is misplaced. In *Bateson*, the plaintiff sought to enforce a right of the Magna Corporation in a derivative action. The plaintiff owned Magna stock continuously from 1956 until May 5, 1967, when he sold all his Magna shares. Plaintiff stated in a deposition that he intended to retain 100 or 200 shares of Magna stock because he had long planned the derivative action. On July 21, 1967, plaintiff purchased 100 Magna shares for the purpose of bringing suit. The derivative action was filed on September 21, 1967. The district court dismissed the suit on the ground that the stockholding requirements of Rule 23.1, Rules of Federal Civil Procedure, had not been complied with. The circuit court reversed, and stated:

"The Rule makes it clear that one who buys stock in the corporation cannot maintain a stockholders' derivative suit if the wrongs complained of were completed before his acquisition of stock. However, where the complaint charged continuing wrongs, occurring at the time plaintiff owned stock, the complaint should not be dismissed on defendant's contention that the claims actually arose prior to the time plaintiff acquired his stock. [Citations omitted.] In other words, the requirement that a shareholder must have owned stock at the time of the wrong of which he complains may be satisfied if the wrong is a continuing one; that is, if it 'spans the plaintiff's ownership, or if new elements in a pattern of wrongful conduct occur after acquisition.' [Citation omitted.]

\* \* \* \* \* \*

**8.** Plaintiff also relies on *Backus v. Finkelstein*, 23 F.2d 531 (D.Minn.1924), to support its claims that neither uninterrupted ownership nor ownership of the stock at the time of the institution of the suit are required. It relies on a portion of the opinion where the court commented that former shareholders had joined as plaintiffs to bring the derivative suit. A subsequent opinion in the same case, however, shows that plaintiff's reliance on this passage is misplaced. In *Backus v. Finkelstein*, 23 F.2d 357 (D.Minn.1927), the court clearly points out that the derivative suit was also commenced by shareholders. 23 F.2d 359. Moreover, the joinder of former shareholders as plaintiffs was permitted, at least in part, to prosecute their individual actions for recision of their stock sales. Thus, overall, *Backus* lends little support to plaintiff's claims.

"With the possible exception of transaction (1), the matters complained of in the present case are not wrongs that have 'completely occurred and been terminated prior to plaintiff's acquisition of his stock,' and therefore, under the *Palmer* test, are continuing wrongs. Thus it would seem that appellant has met the requirement of owning stock at the time of the wrong complained of because the alleged wrongs were continuing at the time he re-acquired stock in Magna." 414 F.2d 130.

The essence of the *Bateson* holding was that most of the alleged wrongs were continuing in nature and therefore occurred at the time the plaintiff owned the repurchased Magna stock. Consequently, plaintiff complied with Federal Rule 23.1 because he owned stock at the time of these alleged wrongs. It is evident that the *Bateson* case does not support plaintiff's position, but instead supports the decision reached herein.[9]

3. Based on this "continuing wrong" theory applied by the court in *Bateson,* plaintiff next asserts that the transactions in question constitute continuing wrongs and thus its purchase of Foster Wheeler stock was enough to comply with Rule 23.06. Fletcher summarizes the "continuing wrong" theory as follows:

"Under the 'continuing wrong' theory plaintiffs are able to qualify as contemporary stockholders if they obtain ownership status at any time the alleged wrong may be considered still in effect. In other words, the requirement that a shareholder must have owned stock at the time of the alleged wrong in order to have standing to maintain a derivative suit may be satisfied if the wrong is a continuing one, as where the particular wrong spans his ownership of stock or new elements in a pattern of wrongful conduct

occur after acquisition of his stock and the wrong has not completely occurred and been terminated prior to the stock acquisition." 13 Fletcher, Cyclopedia Corporations (Rev.vol.1970) § 5982, p. 426. Since all wrongs committed against a corporation can be viewed as "continuing," the application of the continuing wrong theory has been strictly limited by most courts so that the contemporaneous stock ownership requirement is not emasculated. See, e. g., *Bowman v. Alaska Airlines, Inc.,* 14 Alaska 62, 14 F.R.D. 70 (D.Alas.1952); *Pergament v. Frazer,* 93 F.Supp. 9 (E.D.Mich.1949); *Newkirk v. W. J. Rainey, Inc.,* 31 Del.Ch. 433, 76 A.2d 121 (1950). As the *Newkirk* court, *supra,* reasoned:

" * * * in one sense every wrongful transaction constitutes a continuing wrong to the corporation until remedied. But if the rule embodied in Sec. 51A [Delaware's contemporaneous ownership requirement] is to be meaningful, then clearly 'continuing wrong' cannot be construed in such a sense because it would substantially defeat the statutory policy embodied in Sec. 51A." 76 A.2d 123.

Vista argues that a continuing wrong exists in this case because the gravamen of its complaint is that defendants diverted assets from RayGo which are still in defendants' control. In support of this proposition plaintiff relies primarily on *Bateson,* and *Forbes v. Wells Beach Casino, Inc.,* 307 A.2d 210 (Maine 1973). However, strong reliance cannot be placed on these cases. Although the *Forbes* court found a continuing wrong to exist where " * * * officers of the corporation have taken possession of corporate property wrongfully and are holding it wrongfully * * *," 307 A.2d 223, its decision seemed to be particularly sensitive to the fact that no Maine statute or rule expressly required that a plaintiff satisfy the contemporaneous ownership require-

---

**9.** The trial court likewise reasoned: "As I understand the *Bateson* decision, the court ruled that plaintiff had standing only as to the wrongs which were continuing at the time when he bought the 100 shares, and impliedly said that he did not have standing as to the first wrong which occurred before he acquired the

100 shares, and as to those portions of the other wrongs which had been committed prior to his acquiring shares. If this be a proper interpretation of the decision, then the decision supports the moving defendants' position and does not support the plaintiff's position."

ment which is common in other jurisdictions. As the court stated:

"* * * Maine decisional law does not bar the use of the derivative action by a subsequent purchaser *per se,* and the same attitude is reflected in our Maine Rules of Civil Procedure. Unlike its Federal counterpart, our M.R.C.P., Rule 23 does not require that shareholders who bring derivative actions to enforce duties owed by officers to the corporation must have owned their stock at the time of the wrong." 307 A.2d 224.

Since Minnesota's Rule 23.06 expressly incorporates the contemporaneous ownership rule, the *Forbes* decision is distinguishable from the instant case.

In *Bateson,* the court acknowledged that continuing wrongs existed where the defendant caused the corporation to purchase an airplane which was used more for the benefit of the defendant than the company and where the defendant caused company property to be mortgaged in order to secure the payment of the defendant's personal debt. These wrongs are, arguably, analogous to the alleged wrongs in this case. However, the *Bateson* decision is a very liberal application of the continuing wrong theory and its views are not shared by most courts. See, 7A Wright and Miller, Federal Practice and Procedure, § 1828, pp. 346–48 (1972). If the alleged wrongs in this case were construed to be "continuing," the contemporaneous ownership requirement of Rule 23.06 would be substantially subverted. For this reason, we reject Vista's "continuing wrong" theory.[10]

4. Finally, plaintiff argues that if the contemporaneous ownership requirement of Rule 23.06 is applied to deny it standing, then the rule will infringe upon substantive rights and thus that portion of the rule will be invalidated under the enabling legislation. The trial court raised this issue on his own motion, and indicated that he considered it to be a close question.

The pertinent part of the enabling legislation, Minn.St. 480.051, reads as follows:

"The supreme court of this state shall have the power to regulate the pleadings, practice, procedure, and the forms thereof in civil actions in all courts of this state, other than the probate courts, by rules promulgated by it from time to time. *Such rules shall not abridge, enlarge, or modify the substantive rights of any litigant.*" (Italics supplied.)

As the trial court recognized, the resolution of the instant issue depends upon whether contemporaneous ownership of stock was required prior to the adoption of Rule 23.06. Unfortunately, there is no Minnesota law on this issue. As of the time Rule 23.06 was promulgated, this court had not decided whether contemporaneous ownership of stock was necessary for a plaintiff to maintain a derivative action.[11] A number of other courts did recognize by judicial decision the contemporaneous ownership requirement. See, *Home Fire Ins. Co. v. Barber,* 67 Neb. 644, 93 N.W. 1024 (1903) (excellent discussion by Commissioner Roscoe Pound of early case law regarding the contemporaneous ownership requirement). Whether this court would have similarly ruled is, of course, a matter of speculation.

10. Plaintiff also contends that a continuing wrong exists because certain convertible debentures, alleged to be fraudulently issued by defendants to interested parties, will further injure RayGo when those debentures are converted into stock. A similar contention was rejected in *Elster v. American Airlines, Inc.,* 34 Del.Ch. 94, 100 A.2d 219 (1953), where it was argued that improper granting of stock options was a continuing wrong until such options were exercised. The court rejected this claim by stating:

"The wrong or injury of which plaintiff complains is the granting of the options, not the exercise thereof. The action is therefore

not a continuing one." 34 Del.Ch. 103, 100 A.2d 224.

Such reasoning is equally applicable here. To find otherwise would serve to emasculate the contemporaneous ownership requirement embodied in Rule 23.06.

11. The issue had been raised in a couple of early decisions, but the court disposed of those cases on other grounds and thus did not decide the question. See, *National Power & Paper Co. v. Rossman,* 122 Minn. 355, 362, 142 N.W. 818, 821 (1913); *Venner v. Great Northern Ry.,* 117 Minn. 447, 456, 136 N.W. 271, 275 (1912).

However, since plaintiff cannot show that it would have been entitled to bring this action prior to the adoption of Rule 23.06, its contention that the rule infringes upon a substantive right is not supportable. Accordingly, its claim must be rejected.

We find that the trial court was correct in concluding that insofar as the complaint asserts any derivative claims on behalf of Vista summary judgment was proper dismissing such claims. We agree to the extent that Rule 23.06, Rules of Civil Procedure, requires that in a derivative action the plaintiffs must be shareholders in the corporation in whose benefit it sues from the time the alleged improper acts occurred, continuously and uninterruptedly, until the time such action is commenced.[12] Even though Vista was no stranger to the involved transactions, we refuse to fashion any equitable rule to aid this plaintiff in a case such as this where the original shares giving rise to the action were sold with full knowledge of the alleged wrong. The plaintiff here has waited almost five years before bringing its action, having known of and been fully briefed on the original transaction that was allegedly wrong; has not in any substantive way shown a continuous wrong; and has otherwise not met the above basic criteria needed to sustain such actions. We therefore need not reach the other issues raised by this appeal.

The case is remanded for further proceedings consistent with the trial court's finding and this affirmance thereof.

Affirmed and remanded.

12. We recognize that as a general rule the courts have held that where a plaintiff has ceased to be a shareholder after a derivative action has been commenced, the action has been held to abate. See, Henn, Handbook of the Law of Corporations, 2 ed., § 361, p. 762 (1970). In light of the facts of this action, we need not examine the correctness of this rule.