432 P.2d 841

William GOLDIE, Reuben Mutnick and Lewis Kern, Plaintiffs-Appellees,

v.

Hyman YAKER and Sophie Yaker, Dora Moscow and Intermountain Development Corporation, Defendants-Appellants.

No. 8340.

Supreme Court of New Mexico.

Oct. 23, 1967.

Louis J. Vener, Albuquerque, for appellants.

Wilkinson, Durrett & Conway, Alamogordo, for appellees.

## OPINION

WOOD, Judge, Court of Appeals.

Plaintiffs are stockholders of Intermountain (Intermountain Development Corporation). They make two claims against the individual defendants. In a stockholders' derivative action they assert that the individual defendants defrauded the corporation. In a damage claim they assert that these defendants defrauded the plaintiffs individually.

The judgment in favor of plaintiffs provided the individual defendants with an alternative. They could abide by that portion of the judgment in favor of Intermountain in the derivative action or they could pay damages to plaintiffs as individuals.

Various issues are raised by defendants' appeal and plaintiffs' cross-appeal under § 21–2–1(17) (2), N.M.S.A.1953. Two are dispositive. These are: (1) whether plaintiffs have a right to maintain a stockholders' derivative action and (2) whether there are findings to support the damages awarded to plaintiffs as individuals.

Defendants Yaker were purchasers under a real estate contract entered in October 1957. The contract was for 80 acres of land and certain water rights. The price was $15,000.00. The down-payment was $500.00; a note was given for the balance.

Intermountain was incorporated in October 1958. The incorporators were the Yakers and defendant Moscow.

In December 1958 the Yakers sold to Intermountain approximately 49 acres of the land being purchased under the real estate contract. The price was 2500 shares of Intermountain with par value of $10.00 per share. In addition, as part of the sale price, Intermountain assumed certain development costs and assumed the $14,500.00 unpaid balance of the purchase price. Thus, the Yakers retained approximately 31 acres of land and the water rights and acquired 2500 shares of Intermountain stock. In addition, as between Intermountain and themselves, the Yakers relieved themselves of the obligation to pay the balance of the purchase price and the development costs.

In their stockholders' derivative suit, plaintiffs claim that the terms of the sale constituted a fraud on Intermountain because the property received by Intermountain was given an excessive valuation.

The trial court found fraud. Its judgment contained provisions concerning the stock, the water rights and otherwise adjusted the relationship between Intermountain and the individual defendants.

Defendants contend that plaintiffs were not stockholders of Intermountain at the time of the transaction of which they complain and therefore had no right to maintain the action. We agree.

We are not concerned here with conditions precedent to bringing a stockholders' derivative suit. See Porter v. Mesilla Valley Cotton Products Co., 42 N.M. 217, 76 P.2d 937 (1937).

Nor are we concerned with pleading. Section 21–1–1(23) (b), N.M.S.A.1953, required the complaint to allege "that the plaintiff was a shareholder at the time of the transaction of which he complains." The complaint contained such an allegation.

■ The issue here is one of substantive law. Rankin v. Southwestern Brewery & Ice Co., 12 N.M. 54, 73 P. 614, 148 A.L.R. 1092 (1903), states:

"* * * [I]n order to maintain a suit in which the corporation itself is the appropriate plaintiff, the stockholder must show that he was a stockholder at the time of the grievance complained of, or that his stock had since devolved upon him by operation of law. * * *"

There is no claim that the stock devolved by operation of law. Accordingly, plaintiffs must prove that they were stockholders at the time of the grievance of which they complain.

■ Plaintiffs do not deny the applicability of this rule; they contend that the rule applies to completed transactions. If they were stockholders at the time the transaction was completed, plaintiffs assert that they have met the requirements of the rule. This view is stated in Newkirk v. W. J. Rainey, Inc., 31 Del.Ch. 433, 76 A.2d 121 (1950):

"There is substantial authority for the general proposition that if, in a derivative action, the wrong complained of is a continuing one and has not been consummated, a transferee of stock may sue although the wrong commenced before the transfer. * * *"

■ Thus, we must determine whether the wrong of which plaintiffs complain is a continuing one or whether the wrong was complete before plaintiffs became stockholders.

At the time of the sale in December 1958, the Yakers and Moscow were the only stockholders of Intermountain. These stockholders approved the transaction in December 1958. The 2500 shares were issued to the Yakers in January 1959. Plaintiffs purchased their Intermountain stock in April and May 1959. A substantial portion of the 49 acres was transferred to Intermountain after plaintiffs became stockholders.

Plaintiffs' grievance is the fraud which occurred "by foisting property on the corporation at an excessive valuation." Their complaint is not about the property received. Transfer of part of this acreage to Intermountain after plaintiffs became stockholders is not the transaction complained of; such transfer does not afford plaintiffs a basis for recovery.

Plaintiffs complain of the "excessive valuation" placed on the 49 acres received by Intermountain; thus, they complain of the price of this acreage. This price consists of the 2500 shares of stock, assumption of the balance due on the purchase price of the 80 acres and assumption of the development costs. This price was agreed to at the stockholders' meeting held in December 1958. The agreement as to price was completed before plaintiffs acquired their stock.

We distinguish the agreement as to price and payments on the price pursuant to the agreement. The 2500 shares of stock were issued before plaintiffs became stockholders. However, payments may have been made under the assumption agreements after plaintiffs became stockholders. Any such payments do not aid plaintiffs. The wrong complained of was in entering the contract, not in carrying out the contract once it was entered. Levitan v. Stout, 6 Cir., 97 F. Supp. 105 (1951); compare Palmer v. Morris, 316 F.2d 649 (5th Cir. 1963).

The claimed wrong was not a continuing act; the transaction of which plaintiffs complain had been completed before plaintiffs became stockholders. Plaintiffs may not maintain the stockholders' derivative

suit. Newkirk v. W. J. Rainey, Inc., supra; Amabile v. Lerner, 64 N.J.Super. 507, 166 A.2d 603 (1960); Henis v. Compania Agricola De Guatemala, 116 F.Supp. 223 (1953), aff'd 210 F.2d 950 (3rd Cir. 1954).

■ The rule is that the plaintiffs, in order to maintain a stockholders' derivative suit, must have been stockholders at the time of the transaction of which they complain. There is an apparent conflict in the decisions as to whether this rule applies when, as a part of the transaction, fraud was contemplated upon those who should in the future become stockholders. See Old Dominion Copper Mining & Smelting Co. v. Bigelow, 188 Mass. 315, 74 N.E. 653 (1905); Old Dominion Copper Mining & Smelting Co. v. Lewisohn, 210 U.S. 206, 28 S.Ct. 634, 52 L.Ed. 1025 (1908); Old Dominion Copper Mining & Smelting Co. v. Bigelow, 203 Mass. 159, 89 N.E. 193, 40 L.R.A.,N.S., 314 (1909); McCandless v. Furland, 296 U.S. 140, 56 S.Ct. 41, 80 L.Ed. 121 (1935); San Juan Uranium Corp. v. Wolfe, 241 F.2d 121 (10th Cir. 1957); W. Fletcher, Private Corporations, § 196 (perm. ed.rev.repl.1963). Also see 45 Yale L.J. 511 (1936) and 85 A.L.R. 1262, 1276.

The question of fraud contemplated upon future stockholders is not before us. While the complaint raises this question, the trial court's unattacked finding is that the decision to sell stock, in addition to that originally issued to the individual defendants, was not made until the Spring of 1959. This was subsequent to the transaction which plaintiffs claim to be fraudulent. Since at the time of the claimed fraud, there were no plans to have future stockholders, fraud upon future stockholders could not have been contemplated as a part of the transaction.

Plaintiffs' individual claims for damages are based on fraudulent representations concerning the assets of Intermountain. These representations were made in connection with the sale of Intermountain stock to the plaintiffs.

The trial court found fraud and concluded that plaintiffs were damaged in specified amounts as a result of this fraud. Defendants contend that the judgment based on this conclusion cannot stand, asserting that the trial court made no findings as to damages. We agree.

■ Under § 21–1–1(52) (B) (a) (2), N.M.S.A.1953, the trial court must find such ultimate facts as are necessary to determine the issues. "Ultimate facts" means the essential and determinative facts on which the conclusion is reached. A judgment cannot be sustained on appeal unless the conclusion upon which it is based finds support in the findings of fact. Thompson v. H. B. Zachry Co., 75 N.M. 715, 410 P.2d 740 (1966); Star Realty Co. v. Sellers, 73 N.M. 207, 387 P.2d 319 (1963).

■ Plaintiffs do not claim special damages. Accordingly, the measure of damage is the difference between the actual value of the stock and what it would have been if the fraudulent representations had been true. Industrial Supply Co. v. Goen, 58 N.M. 738, 276 P.2d 509 (1954); Stewart v. Potter, 44 N.M. 460, 104 P.2d 736 (1940); W. Fletcher, Private Corporations, § 5600 (perm.ed.rev.repl.1957); see Honaker v. Ralph Pool's Albuquerque Auto Sales, Inc., 74 N.M. 458, 394 P.2d 978 (1964).

■ The trial court made no findings as to the actual value or as to the represented value of the stock. Nor did the trial court make a finding as to the difference in these values. Either a finding as to the two values or a finding as to the difference in the two values was essential to support the conclusion as to damages. Since neither finding was made, the conclusion is not supported by an ultimate fact necessary to determine the issue of damages.

■ Plaintiffs requested numerous specific findings of fact. However, they did not request findings as to the actual value of the stock, the represented value or the difference in the two values. This is not a case where the trial court refused to make findings though requested to do so; accordingly, this is not a case to be sent back so that the missing findings may be made. See Thompson v. H. B. Zachry Co., supra.

By failing to request findings concerning the stock's value, plaintiffs waived findings as to this ultimate fact. Edington v. Alba, 74 N.M. 263, 392 P.2d 675 (1964); Guidry v. Petty Concrete Co., 77 N.M. 531, 424 P.2d 806 (1967).

The judgment is reversed. The case is remanded with instructions to set aside the judgment and enter a new judgment dismissing both claims with prejudice.

It is so ordered.

MOISE and COMPTON, JJ., concur.