**Louis R. CENTRELLA and Teewinot Broadcasting, Inc., a Wyoming Corporation, Appellants (Plaintiffs),**

v.

**Newbold MORRIS and Teewinot Broadcasting, Inc., a Wyoming Corporation, Appellees (Defendants).**

**No. 5097.**

Supreme Court of Wyoming.

July 12, 1979.

Robert N. Williams, Jackson, and P. Richard Meyer, Phoenix, Ariz., signed the brief; and Mr. Meyer appeared in oral argument on behalf of appellants.

Floyd R. King and W. Keith Goody, Jackson, signed the brief; and Mr. King appeared in oral argument on behalf of appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

■ This case is concerned with the propriety of the grant of a motion for summary judgment in a shareholder's derivative action.[1] The appellants-plaintiffs, Louis R. Centrella and Teewinot Broadcasting, Inc. (appellants), on August 2, 1978, brought suit against the defendants-appellees, Newbold Morris (appellee) and Teewinot Broadcasting, Inc. (Teewinot),[2] by means of a complaint which alleged five

---

1. Derivative actions by shareholders are contemplated by Rule 23.1, W.R.C.P.

2. The appellant has initiated this suit naming Teewinot a plaintiff and also defendant. Alignment of the corporation as a party is a matter of confusion in the courts. Whether it should be plaintiff or defendant depends upon its position. Theoretically, a stockholder's derivative action is one brought on behalf of the corporation and the complaint in this case does ask for damages payable to the corporation. The complaint also asks for damages for appellant against Teewinot. As in this case, the corporation is typically dominated by officers and directors also defendants which suggests the corporation should be aligned as a party defendant because of the antagonism between management and shareholder; so most courts in such instances refuse to align the corporation as a plaintiff. We agree. Wright and Miller, Federal Practice and Procedure: Civil § 1822. Parties to an action should be arrayed in a way that produces an actual and substantial collision of interests between the two sides. *City of Indianapolis v. Chase National Bank*, 1941, 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47. We will direct that Teewinot be dismissed as a party plaintiff but remain as a party defendant, more suitable for a disposition of the fifth cause of action, which will remain after our disposition of the appeal.

causes of action.[3] Appellee moved for summary judgment. The district court granted the appellee's motion for summary judgment as to the first, second, third, and fourth causes of action,[4] all of which are a part of or related to appellant's basic shareholder's derivative action. The district court made an express determination that there was no just reason for delay and expressly directed the entry of the partial summary judgment, pursuant to Rule 54(b), W.R.C.P. Appellant asserts:

1. Summary judgment is improper because there are genuine issues of material fact.

2. The beneficiary of a voting trust agreement has a cause of action against a voting trustee who is also a corporate officer when the trustee wrongfully charges his personal living expenses to the corporation as business expenses.

3. A trustee who is also a corporate officer may not defeat a cause of action by the corporation and beneficiary against him by causing the corporation to redeem the beneficiary's stock.

We will affirm.

Appellant became an employee of Teewinot in April of 1976. At that time appellee was the sole shareholder of Teewinot and served as its secretary-treasurer. In late 1977, appellee decided that he wanted the working managers of Teewinot to own stock in the corporation. Appellee informed appellant that he was going to charge $57,000.00 in expenses to Teewinot that he had paid over the years 1973–1977.

Appellee had paid these expenses, because Teewinot did not have the money to pay them. The $57,000.00 was charged to Teewinot in late 1977 and as a result Teewinot was indebted to appellee for a total of $299,000.00.[5] The $57,000.00 charged to Teewinot in 1977 consisted of: (1) lunch, dinner, and entertainment expenses, presumably paid by appellee in his role as corporate secretary-treasurer; (2) expenses of housing in Jackson, Wyoming, for members of the board of directors and their families at various times; (3) corporate, legal, and accounting expenses; and (4) expenses incurred by appellee in attending various broadcasting conventions and seminars. Appellee claimed these were all legitimate business expenses. Appellant claimed they were primarily personal living expenses of the appellee or were business expenses grossly disproportionate to Teewinot's annual cash flow position.[6] In any case, appellant admits that in December, 1977, before he became a stockholder, appellee informed him that the $57,000.00 would be added to Teewinot's indebtedness.

On January 1, 1978,[7] appellee transferred 15,000 shares of Teewinot stock to appellant for which no consideration was paid. However, as a result of this stock transfer, ap-

3. The *first* cause of action alleged is a shareholder's derivative action, which asserts that appellee Morris violated his fiduciary duty to manage Teewinot Broadcasting, Inc., in the best interests of the shareholders of whom Centrella is one. The violation of a fiduciary duty is asserted to be that appellee Morris charged some $57,000.00 in personal living expenses to Teewinot Broadcasting, Inc. The *second* cause of action alleged that appellee Morris' conduct entitled appellant to punitive damages. The *third* cause of action alleged that appellee Morris' conduct justified termination of the voting trust agreement between appellant and Morris and a requirement that appellant be issued stock in Teewinot Broadcasting, Inc., free of the voting trust agreement or other restrictions. The *fourth* cause of action alleges that appellant is entitled to compensatory damages in the amount wrongfully charged to Teewinot by appellee Morris. The *fifth*

cause of action alleged that appellant is owed a sum of money by Teewinot for services rendered to the corporation in 1978.

4. The district court's order indicates this was done after considering the pleadings, affidavits, memorandums, depositions and arguments of counsel, all of which appear in the record, excepting the argument of counsel.

5. Before the $57,000.00 was charged to Teewinot by appellee, there was already an outstanding indebtedness of Teewinot to appellee of $242,000.00.

6. Gross revenue of Teewinot appears to have been $146,000.00 in 1977, and significantly less than that in preceding years.

7. Actually this was done on January 8, 1978, but all documents were dated January 1, 1978.

pellant was no longer to be a salaried employee but rather was to receive periodic dividend payments. The stock certificate issued to appellant, which he did not read, appeared thus:

"STOCK CERTIFICATE
"Certificate No. _3_ _15,000_ shares

"TEEWINOT BROADCASTING, INC.

"Incorporated under the laws of the State of Wyoming. Capital stock, _15,000_ shares without nominal or par value.
"This certifies that _Louis R. Centrella_ is the owner of _15,000_ shares without nominal or par value of the capital stock of Teewinot Broadcasting, Inc.

"This stock cannot be sold or transferred or encumbered until reported to, and approved by, the Board of Directors, and then may be transferred only on the books of the Corporation by the holder thereof in person or by attorney, upon surrender of this Certificate properly endorsed.

"The holder hereby grants to the Corporation an option to purchase the stock from the holder at any time if the holder's employment by the Corporation shall terminate, either by reason of death, resignation, or other cause. If the Corporation purchases under this agreement, it shall pay the holder, or his legal representative, the book value of the stock as appears by the last preceding annual statement less all sums and interest that may be owing to the Corporation from the holder. In the event that the book value of the stock is less than one cent, the Corporation may purchase the stock under this option for one cent per share. [Underscoring added.]

"This certificate is subject to a Voting Trust Agreement between the owner hereof and Newbold Morris, voting Trustee.

"IN WITNESS WHEREOF, the Corporation has caused this certificate to be signed by its duly authorized officers and its corporate seal to be affixed hereto on _January 1, 197_8_.

"/s/ Newbold Morris /s/ Jeffrey C. Woodruff
"Secretary President"

The stock was in turn transferred by appellant to appellee as trustee:

"For value received _I_ hereby sell, assign and transfer unto _Newbold Morris, Trustee_ shares represented by the within certificate, and do hereby irrevocably constitute and appoint _Newbold Morris, Secretary_ [sic] attorney to transfer the said shares of the books of the within-named Corporation with full power of substitution in the premises.
"DATED _Jan. 1, 1978_
 "/s/ Louis R. Centrella_
"In presence of
_"/s/ Jeffrey C. Woodruff"_

Appellee was to vote the stock pursuant to a Voting Trust Agreement.[8]

Appellant became dissatisfied with the new arrangement set up by appellee and so informed appellee by letter dated March 24, 1978. By the letter appellant proposed a new arrangement and stated that if appellee did not accept it, appellant would resign as of April 30, 1978. As it actually happened, appellant left his job on April 13, 1978, for his annual vacation and never returned to work. When asked in deposition if he had resigned, he said "No." He preferred to characterize what he had done as, "I stopped going to work," but in his deposition confessed that he considered that a resignation. On April 15, 1978, the board of directors of Teewinot redeemed appellant's 15,000 shares of Teewinot stock at the price of $.01 per share. Actually, appellant was paid nothing for the redemption, as it was the board of directors' contention that appellant owed Teewinot more than the amount due him for the stock as more clearly appears in the counterclaim, yet to be tried in connection with the fifth cause of action.

 The record discloses no specific basis upon which appellee sought or was granted summary judgment. Appellee sim-

---

8. The voting trust agreement was made in recognition of appellee's substantial loans to

Teewinot and to protect appellee's interest and creditor's status "in every practicable way."

ply made the motion, attached affidavits, supplemented them with references to appellant's deposition, asserted there were no material fact issues, and claimed that he was entitled to judgment as a matter of law. We assume the district court had a reason for granting the motion for summary judgment and we would prefer that he had entered his reasons into the record. Absence from the record of a specific basis upon which summary judgment was sought or granted is a handicap to the reviewing court, although specific bases are not mandatory under the rule. *Park County Implement Co. v. Craig,* Wyo.1964, 397 P.2d 800, 801; Rule 56, W.R.C.P. We consider a motion for summary judgment as though originally before us because we are presented with the same materials as the district judge. *Meuse-Rhine-Ijssel Cattle Breeders of Canada Ltd. v. Y-Tex Corporation,* Wyo. 1979, 590 P.2d 1306.

Assuming the positions of the litigants to have been consistent throughout the proceedings, we perceive that appellee sought his summary judgment based on several alternative theories. First, appellant presented no evidence whatever in any form (e. g. affidavit, deposition, interrogatories) that showed any of the $57,000.00 in expenditures was improper, as is required by Rule 56, W.R.C.P. and furthermore the corporation suffered no damage because it never in fact paid the bill or even acknowledged it to be a debt of the corporation. Second, appellant knew of the $57,000.00 charge off in late 1977 and made no complaint about it at or before the time he consummated the agreement through which he received the 15,000 shares of stock, thus waiving any complaint and he should be estopped. Third, appellant was not a shareholder at the time the transaction of which he complains took place and therefore could not maintain a shareholder's derivative action. Fourth, appellant was not a shareholder at the time he filed his shareholder's derivative action and, therefore, cannot maintain a shareholder's derivative action. Appellee also raised other questions about the sufficiency of the affidavits submitted by appellant in opposition to the motion for summary judgment.

This court has had before it little if any litigation involving shareholder's derivative suits. The closest is *Smith v. Stone,* 1912, 21 Wyo. 62, 128 P. 612, involving a dispute between minority and majority stockholders with respect to the sale of corporate assets, alleged to be fraudulent. While the case does not involve the same questions as those before us, it does describe, generally, the nature of a shareholder's derivative action, quoting from the early work of Pomeroy's Equity Jurisprudence (3d Ed.):

> " 'Whenever a cause of action exists primarily in behalf of the corporation against directors, officers, and others, for wrongfully dealing with corporate property, or wrongful exercise of corporate franchises, so that the remedy should be legally obtained through a suit by and in the name of the corporation, and the corporation either actually or virtually refuses to institute or prosecute such a suit, then, in order to prevent a failure of justice, an action may be brought and maintained by a stockholder or stockholders, either individually or suing on behalf of themselves and all others similarly situated, against the wrongdoing directors, officers, and other persons. * * * The stockholder does not bring such a suit because *his* rights have been *directly* violated or because the cause of action is *his* or because *he* is entitled to the relief sought; he is permitted to sue in this manner simply in order to set in motion the judicial machinery of the court. The stockholder, either individually or as the representative of the class, may commence the suit, and may prosecute it to judgment; but in every other respect the action is the ordinary one brought by the corporation, it is maintained directly for the benefit of the corporation, and the final relief, when obtained, belongs to the corporation, and not to the stockholder-plaintiff.' " 21 Wyo. at 95, 128 P. at 620–621.

See, Note, Shareholders' Right to Direct Recovery in Derivative Suits, 17 Wyo.L.J. 208 (1963).

Although the appellant in his brief disagrees, the record in this case discloses the material facts to be undisputed. Appellee charged $57,000.00 in accumulated expenses to Teewinot in December, 1977, which it never paid or acknowledged as a debt. Appellant was fully informed of this transaction before he received his stock in Teewinot. The 15,000 shares of stock were transferred to appellant on January 1, 1978, as a means of providing compensation to him for his services as an employee of the corporation through payment of dividends, rather than a salary, to avoid payment of social security contributions (F.I.C.A.) for both employer and employee and withholding taxes. Appellee refers to this arrangement as an "advance of dividends" from future corporate earnings.

One who obtains corporate stock may not maintain a derivative action complaining of a transaction which took place prior to his becoming a stockholder, unless the mismanagement or its effects continue and are injurious to him, or it affects him specially and peculiarly in some other manner.[9] *Hawes v. Oakland,* 1882, 104 U.S. 450, 26 L.Ed. 827; *Davis v. Harrison,* 1946, 25 Wash.2d 1, 167 P.2d 1015; *Jepsen v. Peterson,* 1943, 69 S.D. 388, 10 N.W.2d 749, 750–751; 19 Am.Jur.2d Corporations, § 564, pp. 94–95; See also, Anno., "Right of stockholder to maintain derivative action based upon mismanagement or misfeasance by officers or directors prior to his acquisition of stock," 148 A.L.R. 1090 (1944), with Later Case Service. We hold that because appellant had no stockholding interest in Teewinot at the time of the transaction complained of, he may not maintain a derivative suit to remedy the alleged wrong and thus affirm the partial summary judgment of the district court.[10] It further appears that there could be no damage to appellant as a shareholder because the allegedly wrongful charge to the corporation was neither paid nor acknowledged, nor was appellant to even be paid dividends upon the basis of corporate profits but was to receive $1,000.00 per month "dividends" plus various fringes.[11] From the obvious state of insolvency of the corporation created before he became a shareholder, his interest and that of the corporation were no more than illusions. The deposition of appellee indicates that consideration was being given to bankruptcy. Appellant made no claim that the complained of transaction was in any way a continuing sort of wrong, nor would the undisputed facts sustain such a claim. This disposition makes it unnecessary for us to address any of the other issues suggested to us in appellant's brief and argument.[12]

9. Many states have adopted statutes codifying this general principle of law. E.g., see *Rank v. Lease Associates, Inc.,* 1970, 45 Wis.2d 689, 173 N.W.2d 713; *Goldie v. Yaker,* 1967, 78 N.M. 485, 432 P.2d 841. Rule 23.1, F.R.C.P., requires that plaintiff allege that he was a shareholder at the time of the transaction of which he complains. That provision is not in Rule 23.1, W.R.C.P., probably omitted because its principal purpose in the Federal Rules is to prevent the acquisition of shares of stock to create diversity in order to proceed in Federal court. Wright and Miller, Federal Practice and Procedure: Civil § 1821. There are substantive reasons, however. The rule is thought to be a safeguard against champerty or fomentation of litigation by shareholders and thus is something more than a procedural matter. This principle needs no rule of civil procedure. See discussion, Wright and Miller, Federal Practice and Procedure: Civil § 1828. We have no such statute but are persuaded by the authorities cited in the body of this opinion that it is a sound postulate of corporation law and judicial policy.

10. Any complaint appellant may have concerning his employment agreement with Teewinot and the appellee is fully preserved in his fifth cause of action which is unaffected by the summary judgment.

11. When asked in the taking of his deposition, "Have you sustained damages by reason of those expenses being charged to the corporation?", appellant replied, "No." Appellant was asked, "Did Mr. Morris ever take funds from the corporation, to your knowledge, that he should not have?" His answer: "Although in my opinion, some of the expenditures were unnecessary, to my knowledge Bob did not take funds from the corporation."

12. Appellant asserted an issue regarding the redemption of appellant's stock on April 15, 1978. This redemption took place pursuant to the stock transfer agreement of January 1, 1978 (see stock certificate supra). Appellant in no way complained that this agreement was not binding upon him and we see no reason to

There were no material facts in dispute and appellee was entitled to summary judgment as a matter of law. Rule 56(c), W.R.C.P.

Affirmed with directions to dismiss Teewinot as party plaintiff.

question it on its face. We mention this as an aside, because as a result of that agreement and the redemption which in fact took place, appellant had no stockholding interest in Teewinot at the time his suit was filed. As a general rule, one who has transferred or lost title to his stock may not maintain a stockholder's derivative action. 19 Am.Jur.2d Corporations § 566. Furthermore, the requirement that in a derivative suit plaintiff must be a shareholder at the time of suit, may be inferred from the statement in Rule 23.1 that the action may be "brought by one or more shareholders." Wright and Miller, Federal Practice and Procedure: Civil § 1828. There are exceptions to this rule but we find none present here. Although we do not find it necessary to decide this issue, it would appear to likewise be a bar to appellant's suit *even if* the complained of transaction had taken place after he acquired his stock.