632 P.2d 752

**PLUMBERS SPECIALTY SUPPLY COMPANY, a New Mexico Corporation, Plaintiff-Appellee,**

v.

**ENTERPRISE PRODUCTS COMPANY, a California Corporation, Defendant-Appellant.**

**No. 4849.**

Court of Appeals of New Mexico.

July 23, 1981.

518

Peter B. Shoenfeld, Shoenfeld & Engel, P. A., Santa Fe, for defendant-appellant.

F. Joel Roth, Roth, VanAmberg & Gross, Sante Fe, for plaintiff-appellee.

## OPINION

WOOD, Judge.

Ramona Romero sought damages from Aranda, Plumbers (Plumbers Specialty Supply Company, the plaintiff herein) and Enterprise (Enterprise Products Company, the defendant herein) on the basis of injuries allegedly suffered as the result of the defective manufacturing or defective packaging of a bottle of "Drain Devil". Enterprise refused to defend Plumbers in the Romero suit, which was settled during the jury selection process. Both Plumbers and Enterprise contributed $7,500.00 to the Romero settlement. In this suit, Plumbers sued Enterprise for its costs in defending the Romero suit and the amount that Plumbers paid in the settlement of the Romero suit. The trial court awarded judgment in favor of Plumbers; Enterprise appeals. We discuss: (1) procedural matters, (2) jurisdiction, and (3) indemnity.

*Procedural Matters*

■ (a) Enterprise does not attack the findings made by the trial court. Those findings are the facts in this appeal. *Lerma v. Romero*, 87 N.M. 3, 528 P.2d 647 (1974).

■ (b) Enterprise questions the inclusion of two depositions in the appellate record because neither party formally moved the depositions be admitted as evidence. The trial court found that the attorneys for the parties agreed upon the use of the depositions; that the depositions were submitted to the trial court for its consideration; that the parties, without objection, referred to the depositions in their arguments and requested findings; that the trial court utilized the depositions in considering the merits of the case. There being no attack on these findings, they are facts in this appeal. These findings support the conclusions (1) that the depositions were properly before the trial court by agreement, and (2) that the depositions should be included as a part of the appellate record.

(c) The trial court did not specifically find that it was Enterprise's product that caused Romero's injuries. Enterprise claims that such a finding was necessary in order for it to be liable. This contention is based on evidence that prior to June, 1975, Plumbers obtained Drain Devil from Enterprise's predecessor. Enterprise's argument is that it cannot be liable unless it supplied the bottle of Drain Devil on which Romero's claim was based. See *Winward v. Holly Creek Mills, Inc.*, 83 N.M. 469, 493 P.2d 954 (1972). This argument is answered by unattacked findings which are: 1. "At all material times hereto, Enterprise * * * manufactured, labeled, packaged, and sold a product known as 'Drain Devil', a drain solvent, to Plumbers * * * for the purpose of resale." 2. "On or about February 20, 1976, Ramona Romero purchased a bottle of 'Drain Devil' from a plumber who had purchased it from * * * [Plumbers] who in turn had purchased it from * * * [Enterprise]". These unattacked findings dispose of the contention that Enterprise's product was not involved.

(d) Plumbers' dealings with Enterprise were through Rubin. There was testimony of Plumbers' conversations with Rubin and there were letters from Enterprise to Plumbers, signed by Rubin as "Vice President, Administration". Rubin's deposition was before the trial court. Enterprise's liability was based on Rubin's dealings with Plumbers.

■ The trial court did not specifically find that Rubin had the authority to act on behalf of Enterprise. In the absence of such a finding, Enterprise asserts it cannot be held liable for Rubin's actions. Enterprise relies on *Rekart v. Safeway Stores, Inc.*, 81 N.M. 491, 468 P.2d 892, 38 A.L.R.3d 354 (Ct.App.1970), which dealt with the out-of-court admission of an acting manager, and the absence of any showing as to the acting manager's speaking authority. That is not the situation in this case; Rubin testified to his authority in his deposition which was before the court. This trial testimony was sufficient to establish Rubin's authority. See *Ronald A. Coco, Inc. v. St.*

*Paul's Methodist Church*, 78 N.M. 97, 428 P.2d 636 (1967); *State v. Kelly*, 27 N.M. 412, 202 P. 524, 21 A.L.R. 156 (1921). Inasmuch as the evidence as to Rubin's authority was not controverted, a finding as to that authority was not required; the findings, which refer to Enterprise's representations and communications (these being the representations and communications of Rubin), were sufficient findings on which to base Enterprise's liability.

*Jurisdiction*

(a) Plumbers' complaint alleged that Enterprise was a California corporation; it is not disputed that Enterprise was served with process in California. Enterprise moved in the alternative for dismissal of the complaint or for quashing service of process. After both parties filed legal memoranda, the trial court, by letter, informed counsel that the motion would be denied. Enterprise then asked for a "factual hearing" or in the alternative, for opportunity to make a tender of proof. Enterprise objected to entry of the formal order denying the motion "for lack of hearing". Enterprise complains of the denial of its motion.

Enterprise relies on *State ex rel. Anaya v. Columbia Research Corp.*, 92 N.M. 104, 583 P.2d 468 (1978), which held that where jurisdiction is based on process served under our long-arm statute, the plaintiff has "the burden to prove the jurisdictional allegations at the hearing on * * * [defendant's] motion to dismiss." Although a plaintiff must prove the jurisdictional facts when those facts are in issue, we have reservations about a procedure which puts the burden on a plaintiff to prove a portion of his case in advance of trial. When a defendant moves to dismiss, in advance of trial, it would seem that defendant should have the burden of persuasion as to the absence of jurisdictional facts. Nevertheless, we must follow the *Columbia*, supra, decision. *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973).

▪ Neither the absence of a hearing on the pretrial motion to dismiss nor the denial

of the pretrial motion was error. Among the grounds for jurisdiction under our long-arm statute, § 38–1–16, N.M.S.A. 1978, are: (1) the transaction of any business within the state; (2) the commission of a tortious act within the state; and (3) the contracting to insure a risk located within the state at the time of contracting. Each of these three grounds were alleged in Plumbers' complaint. Enterprise's motion to dismiss, supported by affidavit, directly challenged the "doing business" ground and, by inference, challenged the "insurance" ground. The "tortious act" ground was not challenged. Inasmuch as one ground of alleged jurisdiction was not challenged, see *Columbia*, the trial court did not err in failing to put Plumbers to its jurisdictional proof in advance of trial.

▪ (b) During the trial, Enterprise again moved to dismiss, contending that Plumbers had failed to prove facts necessary for jurisdiction under § 38–1–16, supra. The trial court ruled that plaintiff had proved the "doing business" ground, pointed out the similarity of the proof to the facts in *Blount v. T D Publishing Corporation*, 77 N.M. 384, 423 P.2d 421 (1966). *Blount* states:

> When a manufacturer voluntarily chooses to sell his product in a way which will be resold from dealer to dealer, transferred from hand to hand and transported from state to state, he cannot reasonably claim that he is surprised at being held to answer in any state for the damage the product causes.

*Telephonic, Inc. v. Rosenblum*, 88 N.M. 532, 543 P.2d 825 (1975), points out that "doing business" has been defined as doing a series of similar acts for the purpose of realizing a pecuniary profit, or otherwise accomplishing an object. The evidence showed that Enterprise solicited Plumbers' business; that Plumbers began doing business with Enterprise in the summer of 1975 (the Romero injury occurred in the early part of 1976); that Drain Devil was Plumbers' private label, supplied to Plumbers by Enterprise on a regular basis. The evidence met the doing business ground for jurisdiction.

(c) Enterprise asserts there is nothing showing that Plumbers' claim arose from business done by Enterprise in New Mexico. See *Winward v. Holly Creek Mills, Inc.,* supra. In doing business in New Mexico, Enterprise represented to its customers that it carried products liability insurance; that its products were covered under that insurance and that Plumbers "was covered under said coverage"; that if a customer desired verification of the coverage, a certificate of coverage would be provided the customer; that in consideration of this coverage, Enterprise charged Plumbers an additional sum which was included in the cost of the Drain Devil sold to Plumbers. The foregoing recitation is taken from the unchallenged findings. Another unchallenged finding, which we quote in the following subsection, goes to the contents of the protection to be afforded Plumbers. The unchallenged findings show that Plumbers' claim was directly related to the representations and actions of Enterprise in doing business in New Mexico.

(d) It is undisputed that after Enterprise refused to defend Plumbers in the Romero suit, Plumbers incurred attorney fees in providing its own defense. Enterprise asserts that these attorney fees could not be charged to it. Enterprise cites *Worland v. Worland,* 89 N.M. 291, 551 P.2d 981 (1976), for: "Statutory authority is the exclusive means by which the courts may obtain personal jurisdiction of persons outside the State." Section 38–1–16(C), supra, states: "Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section." Enterprise asserts that § 38–1–16 does not authorize an award of attorney fees.

If Plumbers' legal expenses in defending the Romero suit were causally connected to Enterprise's doing business in New Mexico, the fees were properly awarded as a part of Plumbers' recovery. We have previously referred to Enterprise's representation as to products liability coverage and its charge to Plumbers for the asserted coverage. Unattacked finding No. 5 reads in part:

Said products liability insurance coverage, among other things, was to provide and pay for legal defense on behalf of Plumbers * * * if Plumbers * * * was made a party to a claim of damages resulting from the use of the product "Drain Devil" and pay any damages which Plumbers may pay or be required to pay as a result of any claims concerning said product.

Enterprise's refusal to defend Plumbers was contrary to its representations to Plumbers in selling Drain Devil to Plumbers. The legal expenses incurred by Plumbers were directly tied to the business Enterprise did in New Mexico. Under these circumstances, Enterprise could properly be held to pay Plumbers' legal expenses incurred in defending the Romero suit.

(e) Enterprise contends the trial court failed to make "the finding required to support jurisdiction." This claim is frivolous. Not only did the trial court make numerous evidentiary findings as to doing business, it found the ultimate fact—Enterprise was served with process in California "pursuant to the laws of New Mexico." Both the evidentiary findings and the ultimate finding support the trial court's conclusion that it had jurisdiction over the parties and the subject matter.

*Indemnity*

Enterprise had charged Plumbers a fee as consideration for its promise to provide and pay for Plumbers' defense in the Romero suit, and its promise to pay for damages that Plumbers was required to pay. The trial court awarded judgment in favor of Plumbers on the basis that Enterprise had agreed to indemnify Plumbers. Enterprise does not challenge the proof which showed a contract of indemnity. Enterprise claims that the findings were insufficient to support the conclusion of indemnity. See *Goldie v. Yaker,* 78 N.M. 485, 432 P.2d 841 (1967).

(a) Enterprise states that it is basic indemnity law that a defendant, *in order to be required to indemnify another,* must be "primarily liable" vis-a-vis the other party,

citing *Rio Grande Gas Company v. Stahmann Farms, Inc.*, 80 N.M. 432, 457 P.2d 364 (1969) and *Harmon v. Farmers Market Food Store*, 84 N.M. 80, 499 P.2d 1002 (Ct. App.1972). This contention is correct in cases of joint tort-feasors; where there are joint tort-feasors, one joint tort-feasor has the right to secure repayment from another joint tort-feasor "who, as between themselves, is primarily liable." *Rio Grande Gas Company v. Stahmann Farms, Inc.*

Plumbers was awarded judgment on the basis that Enterprise contracted to indemnify Plumbers, and not on the basis of indemnity between joint tort-feasors. This argument disregards the facts of the case and relies on an inapplicable legal theory.

(b) Enterprise points out that there was no finding that (1) the Drain Devil supplied by Enterprise caused injury to Romero, (2) Romero was actually injured, and (3) Plumbers was liable to Romero. Reminding us that the Romero suit was settled, Enterprise contends that in the absence of findings to the effect that Plumbers was actually liable to Romero, it could not obtain indemnity from Enterprise. A related argument is "that as a matter of law the Plaintiff failed to prove an essential element of its case, namely the compulsion under which it settled."

Enterprise relies on *Morrissette v. Sears, Roebuck & Co.*, 114 N.H. 384, 322 A.2d 7 (1974), which states:

> While a prejudgment payment in settlement does not extinguish a right of indemnity * * * the * * * [party seeking indemnification] must show that the settlement was made under legal compulsion, rather than as a mere volunteer, for indemnity is not available for payment voluntarily made.

In determining whether the settlement was made under "legal compulsion," the question arises as to what must be shown—actual liability or potential liability. *Morrissette* states:

> [I]f it appears that Sears was not afforded the alternative of participating in the settlement or conducting the defense, then Morrissette will have the burden of

establishing her actual liability to * * * [plaintiff] rather than the lesser burden of showing potential liability. In either event, the reasonableness of the amount of the settlement must be established by Morrissette.

The indemnity claim in *Morrissette* was based on negligence warranty and strict liability. The indemnity claim in *Trim v. Clark Equipment Co.*, 87 Mich.App. 270, 274 N.W.2d 33 (1978), was based on a contract of indemnity. *Trim* held that:

> [T]o recover on the contract of indemnity, Clark need show only its potential, as opposed its actual, liability * * *.

> \*    \*    \*    \*    \*    \*    .

Potential liability actually means nothing more than that the indemnitee acted reasonably in settling the underlying suit. The reasonableness of the settlement consists of two components which are interrelated. The fact finder must look at the amount paid in settlement of the claim in light of the risk of exposure. The risk of exposure is the probable amount of a judgment if the original plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed. [Citations omitted.] If the amount of the settlement is reasonable in light of the fact finder's analysis of these factors, the indemnitee will have cleared this hurdle. The fact that the claim may have been successfully defended by a showing of contributory negligence, lack of negligence or otherwise, is but a part of the reasonableness analysis and, therefore, subject to proof.

The above quotation from *Trim* is consistent with *St. Louis Beef Co. v. Casualty Co.*, 201 U.S. 173, 26 S.Ct. 400, 50 L.Ed. 712 (1906): "But a sum paid in the prudent settlement of a suit is paid under the compulsion of the suit as truly as if it were paid upon execution."

*Tankrederiet Gefion A/S v. Hyman-Michaels Company*, 406 F.2d 1039 (6th Cir. 1969), points out that where there is a contract of indemnification the "ultimate deci-

sion turns upon the language of the contractual undertaking." However, the discussion suggests that a "reasonable" or "prudent" settlement is still a requisite for indemnity.

■ The trial court found that Enterprise was to "provide and pay" for Plumbers' defense and Enterprise was to pay any damages "which Plumbers may pay or be required to pay". Several findings are to the effect that Enterprise was notified of the Romero suit; that it told Plumbers it would "take care of the matter"; that it did not do so; that when Enterprise appeared in the suit, it appeared only for itself and not for Plumbers, and refused to defend Plumbers. In these circumstances, Plumbers was required to show only a potential liability to Romero, not an actual liability. To satisfy the requirement of potential liability, Plumbers was only required to show that it acted reasonably.

■ *Trim v. Clark Equipment Co.*, supra, points out that reasonableness is determined by looking at the amount paid in settlement in light of the risk of exposure, and the risk of exposure "is the probable amount of a judgment if the original plaintiff were to prevail at trial". Mr. Cohen, the executive vice-president of Plumbers at the time of the settlement, testified that his decision to settle was based on his exposure to loss; that if Romero recovered judgment against all three defendants in her suit, and the other two parties did not pay, Plumbers "could get slapped with the whole thing"; that he settled because of his exposure to loss; that the liability claim had become "very large." Mr. Cohen explained that Plumbers decided to settle after selection of the jury; that because of the jury make-up "there was the high degree of probability that the jury would award * * * [Romero] something" and because of the increase in the damage claim the "risk exposure factor had become unreasonable". There is nothing suggesting Cohen's view was unreasonable; the fact that Enterprise settled Romero's claim against it for the same amount that Plumbers paid, and at the same time, supports the reasonableness of the settlement made by Plumbers.

The evidence substantially supports a potential liability on the part of Plumbers; this answers Enterprise's contention that Plumbers failed to prove an element essential to obtain indemnification from Enterprise. The question of sufficient findings remains.

The trial court refused Enterprise's requested findings: (1) that there was no showing respecting the compulsion under which settlement was made in the Romero case; (2) that the settlement was a voluntary payment; and (3) that the settlement was not the result of any "probable" liability. These refusals would be deemed findings against Enterprise if it had the burden of proof, *Gallegos v. Wilkerson*, 79 N.M. 549, 445 P.2d 970 (1968), however, Enterprise had no such burden. The burden of persuasion was on Plumbers to prove it had a potential liability, *Trim v. Clark Equipment Co.*, supra, and it met that burden.

This is not a case where a party waives findings on a particular issue by not requesting such findings. *Goldie v. Yaker*, supra. Plaintiff did request findings, which the trial court adopted, that went generally to the question of potential liability. These findings went to Romero's claim of negligence, and the default judgment (subsequently set aside) of over $100,000.00 entered against Plumbers because Enterprise failed to defend Plumbers after promising to take care of the matter. While evidentiary and not ultimate findings, see *Goldie v. Yaker*, Plumbers did request findings directed to its potential liability. Although these findings are imprecise, when considered in relation to the refused findings, they are sufficient to support the conclusion that Enterprise must indemnify Plumbers.

The judgment in favor of Plumbers is affirmed. Enterprise is to bear its appellate costs.

IT IS SO ORDERED.

HERNANDEZ, C. J., and LOPEZ, J., concur.