867 P.2d 431

The BANK OF SANTA FE,
Plaintiff–Appellant,

v.

Ralph PETTY, Defendant,

Ben A. Lanford, Sr., Dellie Lanford, Gayle C. Petty, and GCP Partnership, Defendants–Appellees.

No. 13785.

Court of Appeals of New Mexico.

Dec. 13, 1993.

Certiorari Denied Jan. 19, 1994.

John W. Boyd, Freedman, Boyd, Daniels, Peifer, Hollander, Guttmann & Goldberg, P.A., Albuquerque, for plaintiff-appellant.

O.R. Adams, Jr., Albuquerque, for defendants-appellees Ben A. Lanford, Sr., and Dellie Lanford.

Stephen P. Eaton, Charles G. Berry & Associates, P.A., Albuquerque, for defendants-appellees Gayle C. Petty and GCP Partnership.

### OPINION

APODACA, Judge.

The Bank of Santa Fe (Plaintiff or the bank) filed a motion for rehearing after the filing of our opinion in this appeal on November 3, 1993. Although we have denied the motion for rehearing, our previous opinion filed November 3, 1993 is withdrawn and the following opinion is substituted in its place.

Plaintiff appeals the trial court's dismissal of its claims under SCRA 1986, 1–041(B) (Repl.1992), following the presentation of Plaintiff's evidence. SCRA 1–041(B) provides for dismissal at the close of a plaintiff's case when "no right to relief" has been shown. Plaintiff had claimed damages against Defendants resulting from alleged fraud and misrepresentation that occurred approximately ten years before Plaintiff's current owner, Robert Keyes (Keyes), purchased the bank. The alleged perpetrators of the fraud were Defendant Ben A. Lanford, Sr., a former director of the bank (Lanford), and Defendant Ralph Petty, a former president of the bank (Petty). This appeal does not involve Petty. The court dismissed Plaintiff's claims on a number of grounds, including Plaintiff's failure to satisfactorily prove its case against Lanford, expiration of the statute of limitations on Plaintiff's cause of action, and application of the contemporaneous ownership doctrine, as well as others. Because we determine that the trial court's dismissal is affirmable based on its application of the contemporaneous ownership doctrine, we address only that issue and affirm. It is therefore unnecessary to address Plaintiff's other issues. The facts of this case will be developed in the discussion of the issue.

## DISCUSSION

### A. *Contemporaneous Ownership Doctrine.*

The contemporaneous ownership doctrine is a rule applicable primarily to stockholders' derivative suits. The doctrine originated as a rule in equity and has been codified in federal and state rules and statutes. *See generally* Paul Harbrecht, *The Contemporaneous Ownership Rule in Shareholders' Derivative Suits,* 25 UCLA L.Rev. 1041 (1978); 7C Charles Alan Wright et al., *Federal Practice and Procedure: Civil 2d* § 1828 (1986). In New Mexico, the rule has been adopted by case law and in our rules of civil procedure, and has been codified in the limited partnership context by statute. *See Goldie v. Yaker,* 78 N.M. 485, 432 P.2d 841 (1967); SCRA 1986, 1–023.1; NMSA 1978, § 54-2-58 (Repl.Pamp.1988). Under the rule, a shareholder who files a derivative action based on a transaction engaged in by the corporation must have been a shareholder at the time of that transaction. *Goldie,* 78 N.M. at 488, 432 P.2d at 844. Specifically, a

person cannot buy stock in a corporation, discover that the corporation was involved in a fraudulent transaction or was gravely mismanaged for several years before that person bought stock, and then file a derivative lawsuit based on the transaction occurring before the stock purchase.

■ Although the case before us is not a derivative action, but a direct lawsuit by the corporation itself, the United States Supreme Court has held that, where a shareholder would be precluded from bringing a derivative lawsuit under the rule, a corporation solely owned by that shareholder will not be able to avoid the rule by filing suit directly. *Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R.*, 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974); *see also Noland v. Barton*, 741 F.2d 315, 317 (10th Cir.1984) (corporation is precluded from bringing actions where its shareholders would be precluded by the contemporaneous ownership rule from doing so). In this case, Plaintiff is owned entirely by Keyes, a subsequent shareholder, which places Plaintiff in the same position as the plaintiff corporation in *Bangor Punta*.

### 1. *Reasons For the Doctrine.*

■ The contemporaneous ownership requirement appears to have two purposes. First, the rule prevents champerty—the practice of purchasing a lawsuit. If a shareholder were allowed to buy stock in a corporation and then bring a derivative suit for prior mismanagement or illegality, such allowance would encourage people to investigate corporate activity and then buy stock in a company solely to file a derivative action. Harbrecht at 1042–44. If the rule is applied strictly, such a practice is impossible. In this case, there is no indication that Keyes purchased the bank solely for the purpose of bringing the lawsuit.

■ The second reason advanced for application of the rule, based on equity, is to prevent subsequent shareholders from reaping a windfall. This was the rationale relied on, at least in part, by the Supreme Court in *Bangor Punta*, 417 U.S. at 710–12, 94 S.Ct. at 2582–84. When the prior mismanagement, fraud, or negligence has produced re-

sults that are obvious and substantial, those results should be reflected in the price of the corporation's stock—the price should drop due to the mismanagement or other fault. Theoretically, the shareholder then purchases the stock at a reduced price due to the negative results flowing from the mismanagement or other fault. The shareholder should not later be permitted to obtain double recovery by filing a lawsuit based on the events preceding his acquisition.

For example, in *Bangor Punta*, the plaintiff purchased, for $5,000,000, a corporation whose assets had been depleted. The purchase did not involve any fraud or unfairness. He then filed suit seeking to recover $7,000,000 for the corporation's prior problematic activities—meaning that, if successful in his action, he would have ended up with the original purchase price, ownership in the corporation, and an additional $2,000,000 in cash profit. The Supreme Court held that the plaintiff should not be able to bring such a lawsuit when he obtained exactly what he had bargained for in the sale—a corporation with depleted assets. *Id.* at 711–12, 94 S.Ct. at 2583–84; *see also Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 215 (2d Cir.1983) (interpreting *Bangor Punta* as ultimately turning on the Court's view that plaintiff paid a fair price for its shares, and therefore suffered no injury as a result of the earlier mismanagement); *Home Fire Ins. Co. v. Barber*, 67 Neb. 644, 93 N.W. 1024, 1028–29 (1903) (decision cited in *Bangor Punta* as authoritative discussion of equitable principles giving rise to contemporaneous ownership doctrine).

Both *Bangor Punta* and *Home Fire* rely heavily on the fact that there was no fraud or other misconduct involved in the subsequent purchaser's negotiations with the seller. *Bangor Punta*, 417 U.S. at 711, 94 S.Ct. at 2583; *Home Fire*, 93 N.W. at 1031. *Home Fire* explicitly states that, if there is fraud in the purchase transaction, the purchaser should sue the vendor for that fraud. *Home Fire*, 93 N.W. at 1029. Otherwise, absent special circumstances, the subsequent purchaser has not been harmed by the prior mismanagement and has no cause of action for it. *Id.* Under these cases, the general

rule is that a subsequent purchaser's potential causes of action are cut off at the time of purchase. *See* 18 C.J.S. *Corporations* § 403 (1990). Unless an exception to the rule applies, as we discuss later in this opinion, the subsequent purchaser cannot bring an action based on conduct occurring before the date of purchase, even if the conduct was unfair to the principal. Additionally, given that the contemporaneous ownership doctrine is the rule rather than the exception, the burden is on the subsequent purchaser to prove that this equitable doctrine should not be applied in a particular case. *Cf. Carter v. Burn Constr. Co.,* 85 N.M. 27, 32, 508 P.2d 1324, 1329 (Ct.App.) ("the party alleging the affirmative [fact] has the burden of proof" on that issue), *cert. denied,* 85 N.M. 5, 508 P.2d 1302 (1973).

### 2. *Facts Supporting Application of the Doctrine in This Appeal.*

■ Plaintiff's specific complaint is that Lanford, as a director of the bank, and Petty, as bank president, leased a building to Plaintiff without disclosing Petty's interest in the lease. Since the lease was finalized, the bank has changed hands twice. It was first sold to the Balls in 1981. In 1987–88, when the bank was on the verge of being taken over by the Federal Deposit Insurance Corporation (FDIC), Keyes obtained it by foreclosing on stock that was collateral for payment of a note signed by the Balls. Keyes negotiated an agreement with the FDIC that allowed him to assume control of the bank, while the FDIC assumed many of the bank's bad loans. It is undisputed that, during all the relevant transactions, the lease was readily reviewable by any interested party and that its terms were clear. One answer brief also observed, and Plaintiff's reply brief conceded, that there was evidence the rental rates under the lease were consistent with Santa Fe rents in the early 1980s, when the Balls owned the bank, and were not "significantly higher than [the] market [rate]" in the late 1980s.

The fact that Keyes obtained the bank through foreclosure and through negotiations with the FDIC shows that he bought a corporation that was in financial difficulty. Plaintiff's briefs do not explain why the terms of the lease did not figure into Keyes' evaluation of Plaintiff's assets and liabilities when he purchased the Balls' note, foreclosed on the stock, and negotiated the takeover. Because Plaintiff was attempting to obtain an exception to the established contemporaneous ownership rule, we believe Plaintiff had the burden of showing how and why the lease was not considered as part of the deal.

The facts favorable to the trial court's ruling, therefore, are: both the Balls and Keyes knew the lease's terms when they bought the bank; those terms were not highly unfavorable to Plaintiff, and in fact were in line with Santa Fe rents; Keyes took over a bank on the verge of failing and negotiated a deal with the FDIC that should have taken into account the bank's assets and liabilities; and it was not until Keyes discovered a potential cause of action arising out of the original lease transaction that he objected to the lease. Based on these facts, the trial court could have concluded that, even if there had been undisclosed insider trading, the results of that transaction were visible to all subsequent purchasers and should have been considered in the acquisition transactions. The trial court therefore did not err in determining that equity would be served by applying the contemporaneous ownership doctrine.

### 3. *Exceptions to Application of the Doctrine.*

■ Plaintiff argues that the contemporaneous ownership doctrine should not apply because this appeal falls within one or more exceptions to it. One possible exception applies where the perpetrators of the illegality intended the harm to fall on future shareholders. *Goldie,* 78 N.M. at 488, 432 P.2d at 844. *Goldie* did not decide whether this exception is the law in New Mexico, and we need not do so either because facts in this case support a finding that there was no intent to have the results of the lease fall on future shareholders. As one answer brief pointed out, although the transaction was first discussed while a prior board of directors was in charge of the bank, the lease was finalized while Lanford and Petty were a director and the president, respectively, and while the bank was controlled by a new

board of directors. The plans for the size of the building and the amount of capital invested increased from $100,000 to $800,000 while Petty and Lanford held their positions. The new board was thus involved in changing and approving the lease, and Lanford himself was part of the new board. The effects of the lease fell on Lanford and Petty, as stockholders of the bank, during the first years of the lease. Plaintiff has not drawn our attention to evidence showing that Petty and Lanford, while finalizing the lease, planned to sell their interest in the bank to different owners. The exception, therefore, is not factually supported in this case.

■ A second exception is the continuing harm rule—under certain circumstances, where the harm caused by the illegal action continues after the subsequent shareholder buys the stock, the contemporaneous ownership doctrine will not be applied. Most jurisdictions, including New Mexico, have held that a transaction requiring continuing payments, such as the lease payments involved here, does not produce the type of continuing harm that justifies not applying the contemporaneous ownership doctrine. *See Goldie,* 78 N.M. at 487–88, 432 P.2d at 843–44 (payments for purchase of property); Wright et al. at 65–68. The Fifth Circuit, however, and some other courts, have taken a contrary view. *See, e.g., Palmer v. Morris,* 316 F.2d 649 (5th Cir.1963). Our view is that, under the particular facts here, because the lease terms in this case were not hidden, ambiguous, or excessive, the trial court acted within its discretion in refusing to apply the continuing harm exception. *See* Harbrecht at 1054–55 (discussing situation in which lease terms are known and therefore presumably would be a factor in subsequent purchaser's share price).

■ A third exception to the contemporaneous ownership doctrine is the fraudulent concealment exception. Because Lanford concealed Petty's interest in the lease, Plaintiff argues, the rule should not apply. Plaintiff relies on *Computer Statistics, Inc. v. Blair,* 418 F.Supp. 1339, 1348 (S.D.Tex.1976). In *Blair,* the defendants engaged in undisclosed commercial bribery that caused the corporation to lose business after the subse-

quent purchasers bought out defendants' interest in the corporation. The effects of the wrongdoing were the loss of business and profits, and those effects did not become apparent until after the purchase. *Id.* In this case, however, the effects of the alleged wrongful act were not concealed—the lease was available for anyone to examine, and the terms were apparent when Keyes took over the bank. Balancing the equities, as we presume the trial court did, since there is no indication it did not, *see State v. Gonzales,* 105 N.M. 238, 243, 731 P.2d 381, 386 (Ct.App. 1986) ("There is a presumption of . . . regularity in the proceedings below."), *cert. denied,* 105 N.M. 211, 730 P.2d 1193 (1987), the trial court could reasonably determine that the alleged fraudulent concealment was outweighed by the lack of unfairness to Plaintiff and the potential windfall to it if all the profits from the lease were disgorged, as Plaintiff requested. Under these circumstances, the trial court did not abuse its discretion in refusing to apply the fraudulent concealment exception. *See Wolf & Klar Cos. v. Garner,* 101 N.M. 116, 118, 679 P.2d 258, 260 (1984) (application of equitable defenses is in the sound discretion of the trial court).

■ Plaintiff also argues that Keyes' ownership of the bank devolved upon him by operation of law and thus the contemporaneous ownership doctrine does not apply. The rationale supporting this exception is that, if one obtains shares by operation of law, rather than through purchase, one could not have intended to buy a lawsuit. *See Dawson v. Dawson,* 645 S.W.2d 120, 126–27 (Mo.Ct.App. 1982) (interpreting term "operation of law" to include receiving property by will does not interfere with the purpose of the contemporaneous ownership rule to protect corporations from speculators); *cf. Schreiber v. Bryan,* 396 A.2d 512, 516 (Del.Ch.1978) (policy behind allowing only those who were stockholders at time of transaction complained of or who receive their shares by operation of law is to prevent buying shares with litigious motives). In this case, however, Keyes intentionally purchased a note owed by the Balls to a different bank. He then foreclosed on the Balls' shares of bank

stock that secured the note and negotiated with the FDIC to acquire the bank. Thus, Keyes' acquisition of the shares was deliberate and did not occur merely by operation of law. *See McQuillen v. National Cash Register Co.*, 22 F.Supp. 867, 872 (D.Md.1938) ("operation of law" means party acquired rights without that party's act or cooperation); Wright et al. at 68 ("operation of law" means a *nonconsensual* transaction); *see also Dawson*, 645 S.W.2d at 127 (shares received as a devise by will devolve by operation of law).

■ Plaintiff also argues that public interest considerations should preclude application of the contemporaneous ownership doctrine to purchasers of banks. Plaintiff contends that, considering the poor economic state from which banks and savings and loans are currently suffering, wrongdoing directors and officers should not escape liability. A similar argument, concerning the public interest invested in railroad companies, was made and rejected in *Bangor Punta*, 417 U.S. at 716–17 n. 13, 94 S.Ct. at 2586 n. 13. As in *Bangor Punta*, the argument fails here. Neither Keyes nor Plaintiff is the public; there was no showing that the lease terms caused Plaintiff to fail or will burden the public with any cost; there was no request to allow the public, rather than Keyes or Plaintiff, to recoup the losses caused by the lease. Rather than applying a blanket prohibition against application of the rule to corporations that own banks, courts should do equity on a case-by-case basis. *Cf. id.* at 717 n. 13, 94 S.Ct. at 2586 n. 13 (despite the public interest arguments made by plaintiffs, they "cannot maintain the present action because a recovery by Amoskeag would violate established principles of equity"). We conclude the trial court acted within its discretion in rejecting Plaintiff's public interest argument.

### B. *Exclusion of Evidence.*

On a final note, we address Plaintiff's claims of error in the exclusion of certain evidence by the trial court. We do not address the merits of those claims because they are not relevant to our application of the contemporaneous ownership doctrine.

Plaintiff first argues that the trial court improperly excluded certain expert testimony offered at trial. Plaintiff states that the expert would have testified that the effect of inflation on the lease was not reflected in the bank's book value at the time the Balls bought the bank. Because the relevant transaction, for purposes of applying the contemporaneous ownership doctrine, was Keyes' takeover of the bank, not the Balls' purchase of it, this evidence was immaterial to the issue we have addressed in this opinion. Consequently, the exclusion of the evidence, even if erroneous, does not affect our disposition. *See Sheraden v. Black*, 107 N.M. 76, 80, 752 P.2d 791, 795 (Ct.App.1988) (appellate court's function is to correct erroneous results, not to correct errors that would not affect the result).

Plaintiff next complains of the exclusion of evidence concerning the cost of the lease in comparison with other arrangements available when the lease was finalized. Plaintiff contends that this testimony tended to establish that Lanford and Petty were not dealing at arm's length with Plaintiff and that Plaintiff was significantly damaged by their conduct. Plaintiff's arguments concern the merits of Plaintiff's cause of action, rather than the contemporaneous ownership rule analysis we have applied in this opinion. It is thus unnecessary to decide whether the exclusion of this evidence was error. *See id.* In its motion for rehearing, Plaintiff mistakenly referred to our holding on this issue as a determination that the exclusion of this evidence was harmless error. That is an incorrect interpretation of our holding, which is simply that the testimony was irrelevant to an analysis under the contemporaneous ownership doctrine.

### CONCLUSION

For these reasons, we hold that the trial court properly applied the contemporaneous ownership doctrine to the facts in this appeal and properly dismissed Plaintiff's claim at the close of Plaintiff's case. The trial court's decision is affirmed.

**IT IS SO ORDERED.**

ALARID and CHAVEZ, JJ., concur.